[Civ. No. 21593. First Dist., Div. One. Dec. 7, 1964.]

MICHAEL CEMBROOK, Plaintiff and Appellant, v. STER-
LING DRUG INC., Defendant and Respondent.

54

Allen Spivock and H. Leland Shain for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Wallace E. Sedgwick and P. Beach Kuhl for Defendant and Respondent.

MOLINARI, J.—This is an appeal by plaintiff from a judgment in favor of defendant after a jury verdict in an action for damages for personal injuries.[1]

### Questions Presented

1. Was there a violation of plaintiff's right to a public trial?

2. Did the court err in refusing plaintiff's request for special findings of fact by the jury?

---

[1]The notice of appeal recites that plaintiff appeals from the judgment, from an allegedly erroneous ruling of the trial court sustaining defendant's objections to plaintiff's ''Second Request for Admission of Truth of Certain Matters of Fact numbered 6 and 7'' and from the trial court's denial of plaintiff's motion for a new trial. An order denying a motion for new trial is not appealable. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].) Similarly, an order relating to discovery matters is not appealable. (*Southern Pac. Co.* v. *Oppenheimer*, 54 Cal.2d 784, 786 [8 Cal.Rptr. 657, 356 P.2d 441].) However, although only the judgment may be appealed from, the appellate court can review the lower court's action in denying a motion for a new trial and sustaining an objection to request for admissions. (*Southern Pac. Co.* v. *Oppenheimer, supra*, at p. 786; Code Civ. Proc., § 956.)

3. Did the court err in sustaining defendant's objections to introduction of oral evidence at the hearing on the motion for new trial?

### The Record

Plaintiff's complaint against defendant, the manufacturer of a product called, "Bayer Aspirin," alleged that defendant falsely represented in widespread advertising that use of said product for headaches, common colds and other specific ailments was harmless and safe to take; that defendant knew said product was dangerous to the human body and system in that it contained an acidic substance which causes chemical destruction of human tissue; that plaintiff, relying upon such representations, purchased and took internally said aspirin tablets; and that as a result of plaintiff's use of said aspirin he sustained lesions and ulcers of the gastrointestinal tract and other injuries to his internal organs which will necessitate surgical removal of his stomach and other internal organs.[2]

As part of his discovery proceedings, plaintiff served upon defendant a "Second Request for Admission of Truth of Certain Matters of Fact" to which defendant objected. The minutes of the trial court disclose that the objections were "Sustained in part" and "overruled in part," but they do not indicate which were sustained and which were overruled. The briefs of both parties are in agreement, however, that the trial court overruled the objections to questions numbered 1 to 5, inclusive, contained in said request, but sustained the objections to questions 6 and 7 which we set out in the footnote.[3] In view of the relationship of questions

---

[2]These allegations are contained in the second count of the complaint upon which the cause proceeded to trial. The complaint was originally framed in two counts, but the first count was stricken from the records pursuant to stipulation of the parties.

[3]Questions 6 and 7 are:

"6. It is in the public interest that it be readily informed of any ill effects from the use of any drug, especially when same is in such wide and general use as Bayer Aspirin which has been and is so widely advertised all over the United States.

"(a) The court proceedings in this case are a matter of public record and open to public inspection.

"(1) Said court proceedings may be fairly reported by newspapers, magazines, radio, television and all such news media."

"7. Said defendant has entered into a verbal conspiracy with all or most of said news media to suppress publication of any matters connected with the court proceedings in this case and which would warn the public to exercise care in its use of said Bayer Aspirin tablets.

"(a) Although our California Supreme Court reversed the lower courts on August 3, 1961 and ordered defendant to answer questions

6 and 7 to the subject of the right to a public trial, we shall discuss the propriety of these questions, and whether the trial court abused its discretion in sustaining the objections thereto, in connection with our consideration of the question whether there was an infringement of plaintiff's right to a public trial.

At the trial plaintiff testified that he used defendant's product regularly for relief of headaches and colds from about 1934 until August 16, 1956, taking about six or eight tablets every other day, believing defendant's advertisements and package directions that the aspirins were safe to take. When the case was ready for submission to the jury, plaintiff requested four special findings of fact. The trial court denied the request. The jury brought in a verdict for defendant. Plaintiff made a timely motion for new trial upon the grounds that he was prevented from having a fair trial in that he was deprived of a public trial and upon the ground that errors of law, excepted to by plaintiff, occurred at the trial. The motion was denied.

## Plaintiff's Right to a Public Trial

The thrust of plaintiff's claim that he was denied a public trial is the purported lack of publicity in public news media concerning the case while the trial was in progress. In support of this contention plaintiff asserts that the evidence is clear that there was a deliberate suppression of news concerning the case; and that the "publicity blackout" gave a false impression to the jurors that the case was of minor importance and had "a bad psychological effect" on the jurors in minimizing the importance of plaintiff's claims and

---

regarding the ill effects of its Bayer Aspirin in causing irritation of the human stomach in many persons, no mention whatsoever thereof has appeared in any such news media but only in the official legal reports and legal journals.

"(1) Although this Superior Court ordered defendant to answer said questions on December 27, 1961, no mention thereof has appeared in any such news media.

"(b) Such suppression of news and information about court proceedings in this case by defendant constitutes an unwarranted interference with this Court's proceedings which are open to the public.

"(c) Such deliberate and intentional suppression constitutes a contempt of this Court.

"(d) Said defendant is a large corporation which extensively advertises its Bayer Aspirin in all of said news media.

"(1) Defendant has intimidated said news media by impliedly threatening to withdraw its said advertisements if any publication of this Court's proceedings be made by them.

"(aa) Defendant has thus prevented and will prevent any such publication by said media."

thus gave defendant an unfair advantage "in the inscrutable workings of the minds of said jurors. . . ."

Before proceeding to discuss these contentions we shall point out certain applicable legal principles having to do with public trials. ▮▮ At common law trials were public (see History of the Common Law (4th ed) p. 289; Blackstone's Commentaries, Book 3, pp. 684, 685; Jenks, The Book of English Law, p. 91; 2 Bishop, New Criminal Procedure, § 957), and this common law tradition has been recognized and approved by both our state and federal courts. (*Kirstowsky* v. *Superior Court,* 143 Cal.App.2d 745, 750 [300 P.2d 163].) In California this right is recognized by our state Constitution and by statute. In our state Constitution it is provided that "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; . . ." (Art. I, § 13.) Section 686 of the Penal Code provides: "In a criminal action the defendant is entitled: 1. To a speedy and public trial." With respect to civil cases it is provided that excepting in actions for divorce or seduction, where a court may direct the trial to be private: "The sittings of every court of justice shall be public. . . ." (Code Civ. Proc.,[4] §§ 124, 125; see *People* v. *Hartman,* 103 Cal. 242 [37 P. 153, 42 Am.St.Rep. 108].)

▮ The concept of a public trial has been stated thusly in *Hartman*: "The trial should be public in the ordinary common-sense acceptation of the term. The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, as we have before suggested, with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial." (P. 245; in accord: *People* v. *Byrnes,* 84 Cal.App.2d 72, 73 [190 P.2d 290]; *People* v. *Swafford,* 65 Cal. 223, 224 [3 P. 809].) A public trial is generally associated with the idea of "the open courtroom" in which the proceedings are "open to public view." (See *E. W. Scripps Co.* v. *Fulton,* 100 Ohio App. 157 [125 N.E.2d 896, 899, 903].) In *State* v. *Hensley,* 75 Ohio St. 255 [79 N.E. 462, 463, 9 Ann.Cas. 108, 109, 9 L.R.A. N.S. 277, 280], a public trial was described as follows: "[A] public trial means one which is not limited or restricted to any particular

---

[4] All statutory references hereinafter made are to the Code of Civil Procedure unless otherwise indicated.

class of the community, but is open to the free observation of all.''

■ A number of reasons have been ascribed by the textbook writers and the cases for the public trial. The most important and fundamental one is ''the safeguard it provides against the use of the courts by tyrants and despots to suppress the inherent liberties and freedom of our society.'' (4 U.C.L.A. L. Rev. 475, 478; see *In re Oliver*, 333 U.S. 257, 270 [68 S.Ct. 499, 92 L.Ed. 682] ; *Kirstowsky* v. *Superior Court, supra,* at pp. 750-751.) Among other reasons are the following: a public trial acts ''as a check upon the possibilities of prejudice and corruption''; it gives the public ''an educational benefit resulting in a greater awareness of the judicial role in our society''; the public trial affects the testimony of witnesses because it acts as a security for testimonial trustworthiness and provides a forum for ''the eliciting of previously unknown information from interested spectators.'' (4 U.C.L.A. L. Rev. at pp. 477-478, and authorities there cited.) In *Tanksley* v. *United States,* 145 F.2d 58, 59, the court said that ''One of the main purposes of the admission of the public is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial. . . .'' (See 1 Witkin, Cal. Procedure (1954), § 20, p. 153.) And finally, in *State* v. *Keeler,* 52 Mont. 205 [156 P. 1080, 1083, Ann.Cas. 1917E 619, 623, L.R.A. 1916E 472, 476] it is stated that an important reason for the public trial is the right of the people ''to know how their servants—the judge, county attorney, sheriff, and clerk—conduct the public's business.''

In the instant case no contention is made by plaintiff that he was not afforded a public trial in the sense defined and described by the aforementioned authorities. He concedes, moreover, that the courtroom wherein the trial was held was at all times open to the attendance of the public and to open view. There is nothing in the record to indicate that the instant trial was not public. No members of the public or representatives of the news media were excluded from the courtroom during the progress of the trial. Plaintiff's objection is that the trial received no publicity in the news media. He has not cited any case or statute, nor has our research disclosed any, which holds or provides that publication of a trial in news media is a necessary adjunct of the right to a public trial or that a trial is not public where no mention of the trial is made in such media.

■ The right to public trial does not carry with it the concomitant that the trial be publicized in news media. As long as the doors of a courtroom are open, so that a reasonable proportion of the public is allowed to attend, the right to a public trial is satisfied. (See 1 Cooley, Constitutional Limitations (8th ed. 1927) p. 647.) Whether the proceedings are publicized by the news media or others in attendance is purely incidental to this right. In the early case of *In re Shortridge,* 99 Cal. 526, 531 [34 P. 227, 37 Am.St.Rep. 78, 21 L.R.A. 755], it was held that a court does not have the right to prohibit the publication of trial proceedings even in a case tried within closed doors pursuant to the provisions of section 125. ■ We think the converse is likewise true, i.e., that a court cannot compel the publication of the proceedings of a trial. To uphold plaintiff's contentions would amount to a holding that publicity in news media is necessary to a public trial. Such a holding is tantamount to placing the right of public trial at the whim and caprice of those who disseminate publicity. Such a holding would lead to an absurdity, since every dissatisfied litigant or convicted defendant could claim that he did not receive a fair trial because his case was not publicized by the news media.

■ Plaintiff argues that if news of the trial had been circulated in the San Francisco area, a witness favorable to either side who resided in such area might have come forward. While it is true that one of the purposes of a public trial is that witnesses unknown to the parties or their counsel, and having knowledge of matters pertinent to the trial, might be drawn to it, we know of no case which holds that such purpose *must* be attained by publicity in the news media. The positing of a denial of a public trial on the remote possibility that someone might have come forward is certainly speculative and, as pointed out above, would amount to a holding that publicity in the news media is necessary to a public trial. We must point out, moreover, that plaintiff himself was privileged to publicize the trial for the purpose of locating witnesses by availing himself of the advertising functions of the news media.

■ Plaintiff's argument that the lack of publicity of the trial in the news media had the tendency to lessen the numbers of the public in attendance, and that this circumstance had the psychological effect of minimizing in the minds of the jury the importance of his claim is tenuous and contrary to the fundamental concept of an impartial and unbiased jury.

The arguments of plaintiff with respect to the right to a public trial are apparently focused upon the contention that defendant and the news media deliberately conspired to suppress news of the instant case. No such showing was made at the trial. Plaintiff's claim is predicated upon the statement of defense counsel during the trial that the instant case is "the first one of its kind in the history of the world." Because of this statement plaintiff concludes that his case had great publicity value, and fallaciously deduces that because it received no publicity there must have been a conspiracy between defendant and the news media. We doubt that defense counsel's statement is susceptible of the sole interpretation that the instant case was a most important one. The remarks are equally susceptible of the interpretation that this was the first action brought upon which liability was sought because of the ingestion of aspirin. Suffice it to say, even though plaintiff and defendant may have been of the opinion that the case was of primary importance, as it no doubt was to them as litigants, the news media may have nevertheless concluded that the case was not newsworthy. Indeed, when the question of denial of a public trial was raised upon the motion for new trial, a News-Call Bulletin reporter, George Rhodes, filed a declaration therein stating that he attended the trial and formed the opinion that the trial was not newsworthy. Moreover, assuming *arguendo* that defendant was responsible in some way for the lack of publicity in the news media, such conduct would not, in view of the definition of a public trial hereinbefore set forth, constitute a denial of such a trial as long as the trial was open to the public.

As we have pointed out above, no evidence was adduced or offered at the trial concerning any suppression of publicity on the part of defendant. Plaintiff argues that had not the trial court sustained defendant's objection to plaintiff's request for admissions, such evidence might have been forthcoming.[5] A perusal of such request for admissions discloses that he requested admissions from defendant that the public was entitled to be informed of the ill effects from the use of Bayer Aspirin; that defendant entered into a verbal conspiracy with "all or most" of the news media to suppress publication of any matters connected with the instant case; that no mention of the case was made in any news media;

[5] The subject requests for admissions were objected to by defendant on the ground that they were "immaterial, irrelevant and incompetent."

that such suppression constituted an unwarranted interference with the right to a public trial and a contempt of the court; and that defendant prevented the publication of the court proceedings by intimidating the news media by impliedly threatening to withdraw its advertisements of Bayer Aspirin.

 A litigant is entitled to request admissions as a matter of right unless the opposing party successfully bears the burden of showing that they do not fall within the purview of the statute providing for such requests. (*Cembrook* v. *Superior Court,* 56 Cal.2d 423, 427 [15 Cal.Rptr. 127, 364 P.2d 303]; see § 2033.) "Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried," and such requests must be relevant to the subject matter involved in the pending action or reasonably calculated to lead to admissible evidence. (*Cembrook* v. *Superior Court, supra,* at p. 429; § 2033.) It is obvious that all of the subject requests were related to the publicity given by news media to the ill effects resulting from the ingestion of Bayer Aspirin, and the lack or suppression of such publicity in the instant case by such news media. As we have pointed out above, the right to a public trial does not carry the mandate that the trial must be publicized by or in the news media; nor is the subject of trial publicity by means of such media a triable issue in a case such as the one at hand. The subject of the requested admissions was not, therefore, relevant to the instant action nor was it reasonably calculated to lead to admissible evidence. Accordingly, the trial court did not abuse its discretion in sustaining defendant's objections to the subject requests. The suggestion made by plaintiff that the Supreme Court in *Cembrook* v. *Superior Court, supra,* directed that these requests be answered by defendant is without foundation. In *Cembrook,* the Supreme Court held that the 12 requests before it, none of which were of the category of the requests which we are here considering, were relevant to the subject matter, and that, while the trial court might be justified in sustaining objections to such requests in part, it abused its discretion when it sustained the objections to the requests *in toto.*

### Request for Special Findings of Fact

Plaintiff requested that the court submit to the jury four special findings of fact.[6] It is plaintiff's contention that it

---

[6]The special findings of fact requested were as follows:
"(1) Does Bayer aspirin irritate the lining of the human stomach?

was an abuse of discretion for the trial court to deny his request for specific findings and he asserts in his brief that the basis for such request was that such findings "would have thrown some light on the effect of the publicity blackout on the jurors." Defendant contends that the proposed special findings were not submitted in writing or served on it as required by California Rules of Court (Rules for the Superior Courts, rule 17; now Cal. Rules of Court, rule 230)[7] and that such findings were defective as to form. The record is silent as to whether the procedural requirements of rule 17 were met, but it indicates that defendant's counsel was aware of the requested findings and that he strenuously objected to them on the basis that they could serve no legal purpose. No objection was made that rule 17 was not complied with. Under the circumstances the objection that the procedural requirements were not complied with was waived. It does not appear, moreover, that defendant objected to the *form* of the proposed questions. ■ The applicable rule is that in the absence of an objection to the form of the request for special findings of fact at the time of submission of the questions to the jury, it will be presumed that there was an assent to the questions as presented and the complaining party cannot raise the issue for the first time on appeal. (*Napa Valley Pkg. Co.* v. *San Francisco etc. Funds,* 16 Cal. App. 461, 469 [118 P. 469].)

The statutory authority for special interrogatories to the jury is section 625[8]. ■ The general rule is that the giv-

---

"(2) Did the defendant misrepresent the safety of Bayer aspirin before 1952? Was this misrepresentation, if any, intentional? Was this misrepresentation, if any, unintentional?

"(3) Before 1952 defendant failed to sufficiently warn the public that its product, Bayer aspirin, could cause irritation of the lining of the stomach when consumed over long periods of time.

"(4) Did Bayer aspirin cause gastritis in the stomach of Michael Cembrook?"

[7]Rule 17 (now rule 230) read as follows: "Whenever a party desires special findings by a jury, he shall, before argument, unless otherwise ordered, present to the judge in writing the issues or questions of fact upon which such findings are requested, in proper form for submission to the jury, and serve copies thereof upon all other parties."

[8]Section 625 reads as follows: "In all cases the court may direct the jury to find a special verdict in writing, upon all, or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. The special verdict or finding must be filed with the clerk and entered upon the minutes. Where a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

ing of special interrogatories to the jury is addressed to the discretion of the trial judge (*Perry* v. *Schwartz,* 219 Cal.App. 2d 825, 828 [33 Cal.Rptr. 511] ; *Sloan* v. *Stearns,* 137 Cal. App.2d 289, 302-303 [290 P.2d 382]), and the court's determination of the propriety of a requested special finding is not subject to review in the absence of a clear abuse of discretion. (*Perry* v. *Schwartz, supra,* at p. 828 ; *House Grain Co.* v. *Finerman & Sons,* 116 Cal.App.2d 485, 498 [253 P.2d 1034].) The purpose of a special finding of fact is to test the validity of a general verdict by determining whether all facts essential to its support were established to the satisfaction of the jury. (*Bernson* v. *Bowman,* 182 Cal.App.2d 697, 702 [6 Cal.Rptr. 455] ; *Plyer* v. *Pacific etc. Cement Co.,* 152 Cal. 125, 130 [92 P. 56] ; 2 Witkin, Cal. Procedure (1954), § 81, pp. 1811, 1812.) '' [A] general verdict implies a finding in favor of the prevailing party of every fact essential to the support of his action or defense, and the very purpose of special findings is to test the validity of the general verdict by ascertaining whether or not it may have been the result of a misapplication of the law to actual findings in material conflict with the findings which in their absence would be implied from the general verdict . . . and in case of a general verdict for a defendant the special findings, together with the facts admitted on the record may show that the plaintiff is entitled to a judgment notwithstanding the general verdict against him.'' (*Plyer* v. *Pacific etc. Cement Co., supra,* at p. 130.).

 We are satisfied that the trial court did not abuse its discretion in the instant case. Of the four interrogatories, only No. 4 is clearly proper. Interrogatories numbered 1 and 2 are broad general questions which may or may not be related to the facts of the instant case. Interrogatory No. 3 appears to be a statement rather than a question. Suffice it to say an affirmative answer to any or all of these interrogatories (including No. 3, if we deem it to be a question) would not be inconsistent with a verdict for defendant nor would it show that plaintiff is entitled to a verdict notwithstanding the general verdict against him. Moreover, plaintiff's brief confesses that the special findings were designed to uncover whatever effect the asserted lack of publicity about the instant case had upon the jurors. What we have heretofore said concerning publicity of a trial in the news media and the claimed effect of the lack of such publicity upon

jurors, is likewise applicable to the propriety of the requested special findings.

## Motion for New Trial

Plaintiff moved for a new trial on the grounds specified in subdivisions 1 and 7 of section 657.[9] Section 658 provides that when a motion for new trial is made under subdivision 1 of said section "it must be made upon affidavits," and with respect to subdivision 7 that "it must be made on the minutes of the court."

Plaintiff contends that the trial court erred in refusing to admit any oral evidence on the hearing of the motion for new trial. When the motion came on for hearing, plaintiff's counsel proposed to call to the stand, as witnesses, the city editors of the San Francisco Chronicle and San Francisco Examiner, who were present in response to subpoenas. The trial court refused to permit oral testimony on the ground that pursuant to section 658 an application for a new trial on the ground specified in section 657, subdivision 1, must be heard on affidavits. In his offer of proof plaintiff stated, in essence, that these witnesses would be called to prove that three San Francisco daily newspapers, and the San Francisco Bay area television and radio stations, who were informed of the public proceedings in the instant case, and who, on other occasions, had publicized the fact that the ingestion of aspirin could be injurious, carried advertising of defendant's aspirin, known as Bayer Aspirin; that these news media meticulously and purposely refrained from mentioning the public court proceedings of the instant case; and that the advertising departments of such media instructed and urged the city editors not to mention this case for fear of losing defendant's advertising business.

In view of what we have already said concerning the claimed right to have publicity of trial proceedings in the news media, the trial court would have been justified in rejecting this testimony upon the grounds that it was not relevant. The trial court based its refusal, however, upon the procedural ground that it could only hear the matter upon affidavits. It should be here pointed out that an affidavit in support of the motion was filed by plaintiff's counsel aver-

---

[9]These grounds are: "1. Irregularity in the proceedings of the court . . . or abuse of discretion by which either party was prevented from having a fair trial; . . . 7. Error in law, occurring at the trial and excepted to by the party making the application."

ring substantially the same matters which were the subject matter of his offer of proof. Two counteraffidavits were filed by defendant.[10] It should also be noted that the ground urged by plaintiff that he was prevented from having a fair trial because of the lack of publicity in the news media is encompassed by subdivision 1 of section 657. Pursuant to section 658 an application for new trial for such a cause "must be made upon affidavits. . . ." Plaintiff urges that while section 658 provides that the application must be made on affidavits it is not restricted solely to such method. He urges that the requirements of the section were satisfied when he filed his affidavit in support of the motion, and that having done so, his application could, in the discretion of the court, be supplemented by oral testimony.

Plaintiff has cited no California decision, nor have we found any, permitting the use of oral testimony on the hearing of a motion for new trial. ■ It is well established that the proceedings on a motion for new trial are strictly statutory, and the procedure for seeking relief must conform strictly to the statutory mandate. (*Telefilm, Inc.* v. *Superior Court,* 33 Cal.2d 289, 294 [201 P.2d 811]; *Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.,* 192 Cal.App.2d 398, 405-406 [13 Cal.Rptr. 268].) In *McCulloch* v. *Superior Court,* 91 Cal.App.2d 641, 644 [205 P.2d 689], the court said: "Section 657 sets forth seven grounds for new trial, four of which under section 658 must be based upon affidavits. It is obvious that the court's power to grant new trials is restricted to the grounds and to the *method* provided by the statute." (Italics added; see *Webber* v. *Webber,* 33 Cal.2d 153, 164 [199 P.2d 934].) In *Webber,* it is stated that the basis for the requirement that the first four subdivisions of section 657 be supported by affidavits is that these grounds can ordinarily be shown solely by facts which do not appear upon the face of the record. Accordingly, it was there held that where the movant relies wholly upon facts appearing upon the face of the record, the reason for the rule requiring

---

[10]One was filed by the aforementioned Rhodes to the effect that he, the reporters of other newspapers on the same beat, and his editors did not deem the instant case newsworthy, and that he was not intimidated or prevented in any way by anyone from publishing anything about the court proceedings in this action. The other was by a representative of defendant to the effect that defendant has never engaged in any conspiracy or agreement with any of the news media to suppress or stifle the publication of any information concerning the trial or any development concerning it.

affidavits ceases and such rule should be held inapplicable. The basis of the holding in *Webber* is the principle that the law does not require idle acts. (Civ. Code, § 3532.) In view of the holding in *Webber,* the rule appears to be that affidavits are required in support of each of the first four grounds of section 657, unless, as to the particular ground specified, the party moving for a new trial relies solely upon facts appearing on the face of the record.

While we have found no case which states that oral testimony may not be taken in addition to the declarations presented by affidavits, we are satisfied that the rule of adherence to the strict statutory language in proceedings upon a motion for a new trial has not been overruled except to the extent indicated in *Webber.* The instant case is not one calling for the application of the *Webber* exception because plaintiff is not relying upon matters appearing on the face of the record with respect to his motion under subdivision 1 of section 657, but is relying solely upon facts which do not appear on the face of the record. We are satisfied that it is clear from the language of section 658 that where the basis of the motion for a new trial is facts which can be shown solely by facts *dehors* the record, the Legislature, insofar as the first four grounds of section 657 are concerned, intended to limit the showing solely to affidavits. Had the Legislature otherwise intended it could very easily have provided for other methods. Accordingly, we hold in the instant case that the trial court's ruling was proper.

 It should also be pointed out that the trial court based its ruling denying plaintiff's motion for new trial upon the further ground that, where irregularity of proceedings is relied upon as a ground for new trial, the movant must show that he and his counsel were ignorant of the facts constituting the charge until the rendition of the verdict, since it is settled that a party may not remain quiet, taking his chances upon a favorable verdict, and, after a verdict against him, raise a point of which he knew and could have raised during the progress of the trial. (See *Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722, 726 [145 P. 92]; *Estate of Nessel,* 164 Cal.App.2d 798, 806 [331 P.2d 205].) In the present case, the affidavit in support of the motion made by plaintiff's counsel stated that he knew, since 1958, that the news media were not going to publish anything about the instant case. Therefore, assuming *arguendo* that the failure

to publicize the case in the news media was an irregularity in the proceedings whereby plaintiff was prevented from having a fair trial, he was not in a position, in view of such knowledge and his failure to urge the irregularity during the progress of the trial, to urge such error upon a motion for a new trial.

The judgment is affirmed. The appeals from the order denying plaintiff's motion for new trial and the ruling sustaining the objections to the requests for admissions are dismissed.

Sullivan, P. J., and Bray, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 3, 1965.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.