Kathryn M. MADDEN, et al., Plaintiffs,

v.

INDEPENDENCE BANK, and Fulvio Dobrich, Defendants.

Nos. CV 90–1089 LEW, CV 90–2437 LEW, and CV 90–4160 LEW.

United States District Court, C.D. California.

May 14, 1991.

See also 771 F.Supp. 1510; 771 F.Supp. 1506.

Howard P. Brody, Grossman Graven Perry & Block, Los Angeles, Cal., for plaintiffs Kathryn M. Madden, Agnes Shoolbraid and Patsy Huggard.

Shirley D. Deutsch, Littler, Mendelson, Fastiff & Tichy, Los Angeles, Cal., for defendants.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT RE: PLAINTIFFS MADDEN, SHOOLBRAID AND HUGGARD

LAUGHLIN E. WATERS, Senior District Judge.

Defendants' motion for Summary Judgment, or in the alternative, for partial summary judgment, came on for hearing before the Honorable Laughlin E. Waters, Senior United States District Judge on February 19, 1991. Based on the documents filed for this motion, the oral arguments and the case file, the Court finds as follows:

FACTS

In their Complaint for damages and injunctive relief, plaintiffs assert claims for age discrimination, breach of employment contract, intentional misrepresentation and negligent misrepresentation. All plaintiffs were employed by Defendant Independence Bank and are over 40 years old. Defendant Fulvio Dobrich is a supervisor at the Bank who allegedly orchestrated their terminations on the basis of age. Plaintiffs allege that they were terminated due to what defendants refer to as a "job elimination" plan and that many of their positions were *not* eliminated after plaintiffs left. Each was told that their position was absorbed or eliminated and that they were no longer needed at the Bank.

Specifically, as to plaintiff Madden, she was employed by the Bank from July 13, 1983 to September 29, 1989. Until January, 1984, Madden held the position of Assistant Manager at the Northridge Branch of Independence Bank. From January, 1984 until July 31, 1989, Madden held the position of Assistant Vice Manager, in the same branch. On July 31, 1989 Madden was transferred to a new position, Branch Relief Officer. On September 20, 1989, she was advised that her position had been eliminated and that she was being terminated. She was 60 years old upon termination.

Plaintiff Shoolbraid was employed by the Bank from June 20, 1966 until October 2, 1989. At the time she was terminated in October, she was 52 years old, and her title was Assistant Vice President/Accounts Payable. She was advised at this time that her position would be eliminated. Plaintiff Huggard was employed by the Bank from September 12, 1973 until October 16, 1989. From November, 1982, until her termination, Huggard held the position of Payroll Administrator and was 57 years old at the time of her termination.

Defendants have brought the current summary judgment motions in relation to each of these plaintiffs. The gist of their argument is that the terminations were not motivated by age discrimination but, in

some cases, by specific personnel problems with some plaintiffs, and in other cases, by the Bank's need to reduce staff.

*Discussion:*

1. Age Discrimination Claims

Among other claims, plaintiffs assert claims for age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and California Federal Employment Housing Act ("FEHA"). Plaintiffs allege that defendants concocted a job elimination scheme with the intent to get rid of older employees, pursuant to which plaintiffs were terminated. Plaintiffs also allege that Fulvio Dobrich created an "outrageous" atmosphere of verbal "abuse and harassment" to force older employees to resign.

To meet its initial prima facie burden in either an ADEA or FEHA claim, a plaintiff must show that age was a factor which made a difference in the employment decision; age, however, does not have to have been the sole factor for the discharge. *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir.1980). Once plaintiff has made this prima facie case, an inference of discrimination is raised which defendant can rebut by producing evidence of a legitimate, non-discriminatory reason for the challenged employment decision. *Sakellar v. Lockheed Missiles and Space Co.,* 765 F.2d 1453, 1455 (9th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986).

If defendant properly rebuts the inference of discrimination, then plaintiff has the burden of showing that defendant's reasons are merely a pretext. Plaintiff can show this in one of two ways: either 1) directly by persuading the court that a discriminatory reason more likely motivated the employer in selecting the plaintiff for termination or 2) indirectly by showing that the employer's proffered explanation is not credible. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Cotton v. City of Alameda,* 812 F.2d 1245, 1248 (9th Cir.1987).

Defendants in the case at bar have implied that plaintiffs must prove either one of these issues by a preponderance of the evidence. Defendants' argument is misleading as the preponderance standard applies at trial and not at the summary judgment stage. Rather, plaintiffs need only "tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Steckl v. Motorola Inc.,* 703 F.2d 392, 393 (9th Cir.1983). If plaintiff "shows that a triable issue as to [the employer's] motive does exist," the issue is then presented to the jury, unless plaintiff shows such uncontroverted discrimination which permits this court to grant summary judgment in favor of plaintiff. *Meschino v. ITT Corp.,* 563 F.Supp. 1066, 1070 (S.D.N.Y.1983).

*a. Plaintiffs' prima facie case*

To make out a prima facie case of age discrimination, plaintiff must show that:

1. plaintiff was between 40 and 70 years old;

2. plaintiff was fired;

3. plaintiff was performing the job satisfactorily; and

4. plaintiff was discharged under circumstances which give rise to an inference of unlawful discrimination.

*Douglas v. Anderson,* 656 F.2d 528, 531 (9th Cir.1981).

As to plaintiffs Madden and Shoolbraid, their prima facie cases are fairly clear-cut; even defendants have opted not to address the issue fully and assume *arguendo,* that plaintiffs Madden and Shoolbraid can meet this standard. Both of them were over 50 years old at the time of termination. Both were terminated, given a final paycheck and asked to sign a settlement agreement with no offer of another position. Both were performing satisfactorily prior to termination, having received satisfactory performance reviews in the recent past. Finally, both were fired under circumstances which give rise to an inference of unlawful discrimination, as will be discussed.

Defendants contend that plaintiff Huggard, however, cannot make the requisite prima facie showing. According to defen-

dants, Huggard was *not* performing satisfactorily at the time of termination. Apparently, she had a history of personal conflict with co-workers and violated Bank confidentiality. By contrast, plaintiff asserts that all her performance reviews during the many years she worked at the Bank were satisfactory except for a recent one which noted that she needed to control her temper. Although defendants' evidence challenges plaintiff's evidence, plaintiff has offered enough to make out at least a prima facie case. Defendants' conflicting evidence of unsatisfactory performance is more relevant in rebutting plaintiff's prima facie case, not in proving that no such case exists at all.

### b. Defendants' rebuttal

Defendants have sufficiently rebutted the prima facie showings by plaintiffs Madden, Shoolbraid and Huggard. They assert that starting in 1988, the Bank ran into severe regulatory and financial problems, necessitating a reduction and reorganization of staff. Specifically, during the fall of 1988, the FDIC and California State Banking Department conducted a joint examination of the Bank's financial condition. Both agencies criticized nearly all aspects of the Bank's operations, including its inadequate profits excessive overhead, and cost of operation. The FDIC threatened to take enforcement action against the Bank because of these problems.

In May, 1989, Defendant Dobrich was appointed Chairman of the Board of Directors and Chief Executive Officer of Independence Bank. In analyzing the Bank's earnings and expenses, Dobrich came to the same conclusions as the government agencies had. Dobrich decided that the Bank must immediately reduce its staff in an effort to reduce expenses and improve profits. As a result, the Bank's IB Mortgage Department was eliminated. Then at a management meeting held on August 28, 1989, Dobrich requested all members of the committee to submit recommendations as to which positions within their respective departments could be eliminated. On September 11, 1989, the department heads presented their recommendations at a meeting, pursuant to which 12 employees were terminated. According to defendants, by August 1, 1990, the Bank reduced its workforce by nearly 14%.

As to plaintiff Madden, the Bank decided to eliminate her position and not replace plaintiff with anyone else. As to plaintiff Shoolbraid, her position was eliminated as well and her responsibilities divided among other employees. According to defendant, Shoolbraid was not qualified for any other position. As to plaintiff Huggard, defendants claim that she had become so disruptive and had breached the confidentiality of the Bank by telling other employees about imminent lay-offs that the Bank had to fire her.

As defendants note, an employer's reasons for termination need not meet the approval of a judge or jury so long as they are not based on age. *Douglas v. Anderson*, 656 F.2d 528, 534 (9th Cir.1981). A court may not reevaluate such business decisions made in good faith nor second guess an employer's business judgment in an effort to find some possible violation of law. *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1284–85 (7th Cir.1987). Finally, an employer has a considerable degree of discretion with repsect to management of employees, and such discretion may not be disturbed absent proof of discrimination. *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 921–22 (2nd Cir.1981).

The reasons defendants have offered to rebut plaintiffs' prima facie showing of age discrimination as such appear to be legitimate and nondiscriminatory. Whether or not the court agrees that these decisions were financially sound, defendants have satisfied their burden, and the burden now switches to plaintiffs to show that there is a genuine issue of material fact as to the employer's motives. As noted above, plaintiffs can do this one of two ways, either by showing directly that the employer was "more likely" motivated by age discrimination or indirectly that the reasons for the terminations given by defendants are pretextual.

### c. Plaintiffs' genuine issue as to defendants' motives

■ Plaintiffs have produced enough substantial evidence that a reasonable jury could find discriminatory intent. Although plaintiffs are not required to do so, they have provided sufficient direct *and* indirect evidence to raise a genuine issue as to defendants' actual motives.

As to indirect evidence that defendants were motivated by age discrimination, plaintiffs' general argument that Dobrich's supposed "reorganization" was a ruse to clear out the older people is supported by probative and material evidence. This evidence conflicts with defendants' evidence that the Bank had to and did reorganize for financial reasons, thereby indicating a genuine issue of material fact. Plaintiffs have pointed to evidence that while "eliminating" plaintiffs' positions, the Bank continued to hire new employees and spend considerable sums advertising and contracting with headhunters. Further as noted in the declaration of Lewin, defendants' assertion of what time period is relevant and that the Bank's workforce actually shrank during this period is subject to an alternative interpretation that shows the workforce may have expanded. Plaintiffs also have evidence that the Bank did not institute a hiring freeze, which would be consistent with any plan to reduce staff. Finally, the termination agreement which all plaintiffs signed to receive their final check by its coerciveness raises an inference of discriminatory discharge. Such termination agreements are considered probative on the issue of discrimination. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1342 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

■ Plaintiffs have also offered direct evidence that the defendants were more likely motivated by age discrimination than by a legitimate business reason. They cite to many statements made to employees and those who actually terminated plaintiffs by Dobrich, who ordered managers to reduce staff, that indicate that he may have been motivated by discrimination to axe the older employees. These statements do not have to be directed at the specific terminated employee to be directly relevant to an employer's intent. *Meschino v. ITT Corp.*, 563 F.Supp. 1066. (S.D.N.Y.1983). The *Meschino* court noted that such testimony "permits an initial inference that in choosing who should stay and who should go [employers or supervisors] may have relied more on his impressions and feelings than on detailed evaluation." *Id.* at 1071.

In their motions, defendants concede that many of these statements were indeed made but argue that they do not indicate discriminatory intent. Yet a jury could interpret such statements otherwise and infer such intent especially from some of the statements referring to a woman employee as an "old fucking bitch," referring to another employe as "too old," and commenting that the Bank was "full of old people." Admittedly, some of the statements plaintiffs rely on may not be admissible, but those that are admissible are sufficiently probative as to raise the requisite inference of discrimination.

The facts in this case are closely analogous to those in *Oxman v. WLS–TV*, 846 F.2d 448 (7th Cir.1988), where the court found that plaintiff submitted enough evidence to survive the defendant employer's motion for summary judgment. The *Oxman* court determined that the defendant's reasons for the supposed "reorganization" and termination were pretextual, despite an admitted $4 million deficit. *Id.* at 457. Among other things, the court found 1) the "hiring freeze was not absolute, but rather subject to considerable discretion," 2) management stated to the employee that the "business had grown very complex," implying that age was a factor and 3) "while he eliminated 17 positions after they became vacant, he also hired 15 people" which suggested that the cost-cutting was highly selective. *Id.*

Thus plaintiffs have offered sufficient indirect and direct evidence to raise the inference that their terminations were part of a plan to get rid of employees based on their age. Admittedly, defendants have offered credible evidence that the Bank fired Huggard because she was disruptive.

Even if this is true, Huggard has shown that her age as well may have been a determining factor. There is sufficient conflict in the evidence on this fact to warrant her case to go to a jury as well.

Since these plaintiffs have shown that a genuine issue remains as to whether defendants were motivated by age discrimination, summary judgment is denied.

2. Breach of Implied Employment Contract

■ In a breach of implied employment contract claim, a plaintiff has the burden of proving that such a contract existed and that there was an unjustified or unexcused failure by the defendant to perform the contract. *Sterling v. Gregory*, 149 Cal. 117, 121, 85 P. 305 (1906). Plaintiffs here allege that the employment agreement is contained in the Personnel Policy Manual which set forth the Bank's policies for promotions, layoffs, and discipline. Plaintiffs further allege that the Bank terminated them because of their age and that this basis for termination constituted a breach of contract.

Defendants do not contend that an implied contract existed with plaintiffs but argue that plaintiffs Shoolbraid and Madden were terminated as part of a staff reduction plan. They note that courts have found that a need to reduce staff constitutes good cause for termination. *See, e.g., Gianaculas v. TWA, Inc.*, 761 F.2d 1391, 1395 (9th Cir.1985).

Defendants' argument, however, fails for two reasons. First, there is contradicting evidence that a staff reduction actually occurred. Second, the cases cited to by defendants which ruled that staff reduction constitutes good cause are not on point. In *Clutterham v. Coachmen Industries, Inc.*, 169 Cal.App.3d 1223, 215 Cal.Rptr. 795 (1985), the plaintiff employee lost his claim at summary judgment on procedural grounds, failing to submit any declarations in opposition. In *Gianaculas v. TWA, Inc.*, 761 F.2d 1391 (9th Cir.1985) and *Cox v. Resilient Flooring Div. of Congoleum Corp.*, 638 F.Supp. 726 (C.D.Cal.1986), the courts found that staff reduction consti-

tutes good faith. Yet neither case included a claim of age or any other type of discrimination, focusing solely on the terms of an alleged employment contract.

As to Huggard, again defendants have shown that they may have had other good reasons for terminating this plaintiff, alleging a history of disruptive behavior. Yet plaintiff has indicated that these accusations may not be credible and that there is, at minimum, a genuine issue as to whether she was terminated for her behavior or for her age.

Since all three plaintiffs have shown that a genuine issue remains as to whether defendants breached their implied employment contracts, summary judgment is denied.

3. Fraud and negligent misrepresentation

■ Plaintiffs Madden and Shoolbraid have made claims for fraud and negligent misrepresentation on the basis that they were told that their positions were eliminated and that they were not informed that they could apply for another position at the Bank. These plaintiffs contend that their positions were not eliminated and, therefore, defendants lied to plaintiffs. Further, plaintiffs contend that because plaintiffs were not told that they could apply for other positions, they relied to their detriment and did not so apply.

Defendants argue that plaintiffs' positions were eliminated and therefore no misrepresentation occurred. This is clearly true in Madden's case since her position as a rotating manager was newly created then eliminated upon her termination. The evidence is unclear as to whether Shoolbraid's position was truly eliminated or merely delegated to several other employees to share. Whether or not either plaintiff's position was truly eliminated, these plaintiffs' claims fail.

In claims for fraud and negligent misrepresentation a plaintiff must show, among other things, that she justifiably relied on the misrepresentation and was thereby damaged. *Crocker–Citizens Nat. Bank v.*

# 1520

*Control Metals Corp.*, 566 F.2d 631, 636 (9th Cir.1977); *Bernson v. Bowman*, 182 Cal.App.2d 697, 703, 6 Cal.Rptr. 455 (1960). Plaintiffs have not shown that they relied on the misrepresentation that their jobs had been eliminated to their detriment. They did not change their position because, quite simply, they had no position to change—they were fired. There was nothing left to rely on. Whether they were fired because their job had been eliminated or because of age is irrelevant to their claims for fraud and misrepresentation. Plaintiffs have also failed to show that they relied on defendants' failure to inform them of other positions. Absent an affirmative statement by the Bank informing them that they were not allowed to seek other positions within the Bank, they did not detrimentally rely on anything the Bank told them.

As to plaintiff Huggard, defendants did not misrepresent anything to her that she could rely on. Defendants stated that she was being terminated because of her conduct. Plaintiff contends that she was terminated for her age and not her conduct and that this constitutes misrepresentation. Whether or not she relied on these statements, she was without a job. Plaintiff had nothing in defendants' statements to rely on and suffered no damage by any supposed reliance. Accordingly, defendants' motion for summary judgment is granted on these plaintiffs' claims for fraud and negligent misrepresentation.

In sum, this court finds that there are genuine issues for trial concerning whether age was a factor in the termination of plaintiffs Madden, Shoolbraid and Huggard. Therefore, motions for summary judgment on the federal and state age discrimination claims and breach of implied contract claims are denied. Since the court has found that the evidence shows that plaintiffs did not rely to their detriment on anything that defendants did or said, summary judgment is granted on plaintiffs' claims for intentional and negligent misrepresentation.

For these reasons, defendants' motions for Summary Judgment are GRANTED in part and DENIED in part.