[Civ. No. 22174.   Second Dist., Div. One.   Apr. 8, 1957.]

VICTOR BERNATH, Respondent, v. JOHN B. WILSON, Appellant.

George L. Hampton for Appellant.

Frank T. Hennessey for Respondent.

FOURT, J.—The action in this case was brought in the superior court in equity to set aside a default judgment secured in the municipal court by the appellant against the respondent. This appeal is from the judgment in the superior court in favor of the plaintiff and against the defendant.

The plaintiff had employed the defendant to solicit general construction work for him. It was agreed, among other things, that if the plaintiff subcontracted any job procured by the defendant, the plaintiff would pay the defendant

therefor a commission of 33⅓ per cent of the net profit from said work. The defendant procured for the plaintiff certain work, the first of which shall hereafter be referred to as the "Bensinger Job." The plaintiff subcontracted this work to Omar Price for a price that would have yielded a profit, had Price completed the work for the money the parties had agreed upon. However, before Price performed the work the defendant and Bensinger complained to the plaintiff's manager about the slow progress being made by Price and about the unworkmanlike manner in which Price was doing the work. The defendant "asked the Plaintiff to throw Price off the job" and "to cancel the subcontract with Price" and the defendant stated that he would take over the Bensinger job and supervise it for the plaintiff. The plaintiff cancelled the subcontract with Price and the defendant thereupon supervised the work and it was completed at a loss to the plaintiff. The defendant made no complaint about the cancellation and acquiesced in what was done. The plaintiff never paid the defendant any part of the profit that would have been earned had the job been completed by the subcontractor as originally contemplated. In the case in the municipal court, the defendant here asked for $916.67 for this phase of his activities, such amount being one-third of the profit the plaintiff would have made had Price performed as he had agreed upon.

There was another transaction between the plaintiff and the defendant which shall be referred to as the "Gage Job." The defendant procured a construction contract from Travis and Lottie Gage whereby the plaintiff was to construct an addition to a building. The manager of the plaintiff requested the Gages to pay $1,000 on the contract, and such amount was thereupon paid by the Gages to the plaintiff. Thereafter, the plaintiff and the defendant, by a written contract, agreed that the plaintiff would pay to the defendant $500, in lieu of any other sums which he might be entitled to for his services in securing the Gage Job, such sum to be paid "upon completion and payment in full of the subject contract." Later the manager of the plaintiff demanded an added $1,500, from the Gages on their contract, at which time the Gages informed the plaintiff that they had discovered that he, the plaintiff, did not have a general building contractor's license in California, and that they would pay no further money and demanded of the plaintiff that he return the money theretofore paid to him

by them. The manager of the plaintiff advised the Gages that he could not secure a loan for them sufficient to do the work unless the $1,500 was paid, as Gages had not disclosed in their application and agreement a second encumbrance on their property. Gages demanded the return of the money theretofore paid and stated that they did not wish to put any more funds into the project.

The plaintiff did not have a general contractor's license. The contract between the plaintiff and the Gages was then cancelled by mutual consent of the parties thereto, and the plaintiff paid to Gages the sum of $960.80, of the total of $1,050, theretofore paid to him by the Gages. The defendant was advised of the intention to return the deposit to the Gages, after deducting the expense of the permit for the job, and the defendant told the plaintiff's manager that it appeared that there was nothing else to do and agreed to the return of the deposit and the cancellation of the contract.

There was testimony to the effect that at no time prior to the defendant's filing the case in the municipal court did he ever complain to the plaintiff about the cancellation of the Gage contract, and that at no time prior to his leaving the employ of the plaintiff did he ever demand payment for either the Bensinger or the Gage jobs. On the Gage job the defendant requested the sum of $500 in the municipal court, being the amount which was set forth in the contract heretofore referred to.

On Monday, August 16, 1954, George L. Hampton, as attorney for the defendant herein filed an action in the municipal court (Van Nuys), the summons was issued on the date of the filing of the complaint and service of a copy of the complaint and summons was made on the plaintiff herein on Monday, August 23, 1954. The papers so served upon the plaintiff were delivered by him to his attorney, Hiram D. Kellogg, and thereafter, on Friday, August 27, 1954, Kellogg telephoned Hampton and requested and received an extension of time within which to answer the complaint to and including Tuesday, the 7th day of September, 1954, which was the day following Labor Day, a legal holiday. On Monday, Labor Day, the 6th of September, 1954, Kellogg mailed the original answer prepared by him to the clerk of the municipal court, together with the filing fees and the same was received at the municipal court early on September 7,

1954. Further, at the time of the mailing of the original answer to the clerk of the municipal court, Kellogg mailed a copy of the same to Hampton, as the attorney for Wilson.

The trial court found that on Saturday, the 4th day of September, 1954, Hampton, contrary to his agreement and understanding with Kellogg, filed with the clerk of the municipal court a request for entry of default. Hampton apparently then waited for a period in excess of six months before any other proceedings were taken and did not advise Kellogg of what he had done by way of having the clerk enter the default. On March 18, 1955, two weeks after the six months had passed from the date of entry of the default, a judgment by default was secured upon testimony of the defendant given on March 15, 1955. Apparently, on March 21, 1955, an execution was levied upon the plaintiff, which was the first the plaintiff knew of any judgment or default against him. The complaint in the superior court alleged substantially the matter heretofore related, and further, that the plaintiff herein was deprived of the opportunity to move to set aside the entry of the default in the municipal court under section 473, Code of Civil Procedure, within the six months' period; that it is necessary that he apply to the superior court for equitable relief; that he asked Hampton to stipulate to set aside the judgment in the municipal court, but Hampton refused; that he has a good and sufficient defense to the action in the municipal court and that said contracts upon which the defendant based his claim created no obligation, and that he set forth the reason why such was the case, and further that he could show facts which would require that the judgment in the municipal court would be different than that granted on the default. There was no demurrer filed by the defendant in the present case or any other objection made to the form of the pleadings in the superior court.

Appellant contends that the finding by the court to the effect that plaintiff herein had a meritorious defense to the municipal court action, and that the defense upon which such finding or findings was based, and the grounds for the court's decision were erroneous.

In this case it is our opinion that under the circumstances the complaint in equity was good and sufficient. The plaintiff here introduced proper and sufficient evidence to make it appear that a like judgment in the municipal court probably would not follow if the matter was tried as a con-

tested proceeding. Plaintiff here, by the acts of the defendant's attorney, Hampton, was prevented from having a fair adversary trial, or from presenting his case fully and fairly to the municipal court. ▓ A court of equity will relieve a plaintiff from a hard and difficult situation into which he has been inveigled by the strategems and unconscionable conduct of the defendant, who, in so dealing, has acquired an unfair advantage. (18 Cal.Jur.2d 164, Equity.)

Hampton as counsel for the appellant has cited us to many maxims of jurisprudence, including, for example, "one must use his own rights as not to infringe upon the rights of another"; "no one can take advantage of his own wrong" and "for every wrong there is a remedy." With each of such maxims we heartily agree generally, and further, we particularly agree that they apply to the case at hand.

It would seem appropriate, under the circumstances, to call attention to Canon 25 of the American Bar Association Canons of Professional Ethics, which reads as follows:

"A lawyer should not ignore known customs or practice of the Bar or of a particular Court, even when the law permits, without giving timely notice to opposing counsel. As far as possible, important agreements, affecting the rights of clients, should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by the rules of court," and it might also be appropriate to set forth the last sentence in Canon 32, which reads, "But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen."

The American College of Trial Lawyers have recently promulgated a code of standards of ethics, deportment and conduct for the trial lawyer entitled "Code of Trial Conduct," Section 9(a) thereof titled "Relations with Opposing Counsel" reading in part as follows:

"9. Relations with Opposing Counsel:

"(a) A lawyer should adhere strictly to all express promises to and agreements with opposing counsel, whether oral or in writing, and should adhere in good faith to all agreements implied by the circumstances or by local custom. When he knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed." (Ameri-

can Bar Association Journal, vol. 43, No. 3 [March, 1957], p. 225.)

There was no prejudicial error in this matter. The cause should be heard on its merits in the municipal court.

All that the judgment in this case does, in substance, is to set aside the default entered on September 4, 1954, in the municipal court, and to set aside the judgment in the municipal court entered on March 18, 1955. The parties are right where they were before the defendant's counsel violated his agreement and understanding with plaintiff's attorney in reference to extending the time within which the answer could be filed.

Judgment affirmed.

Doran, J., concurred.

White, P. J., concurred in the judgment.