[Civ. No. 9677.   Third Dist.   Nov. 10, 1959.]

WILLIAM ROBERT BRICKELL et al., Appellants, v. EDWARD GRIFFITH WITTMAR, Respondent.

Thomas W. Loris, G. E. Sanford and James Bull for Appellants.

William E. Dopkins for Respondent.

WARNE, J. pro tem.*—In this action both of the plaintiffs appeal from a judgment entered against them upon a defense verdict in a personal injury action, but upon request of counsel for appellants the appeal has been dismissed as to the plaintiff-appellant Percy Ball, as business representative of Construction and General Laborers Union Local Number 185.

Since an order denying a new trial in such as the instant case is not appealable, the appeal from said order is dismissed. (Code Civ. Proc., § 963.)

The sole contention on this appeal is that a new trial should have been granted because of alleged untruthful answers given by the juror, Joseph R. Dieffenbacker when on *voir dire* examination he was questioned as to whether he had any bias or prejudice against one bringing an action for damages for personal injuries or against one suing for $15,000 or $25,000. It is the contention of the appellants that certain remarks made by said juror during the course of the jury's deliberations constitute prejudice and show that he was biased and prejudiced and hence untruthful when he stated to the court and counsel on *voir dire* that he was unprejudiced against anyone bringing an action for damages in a personal injury action when the amount of damages sought to be recovered amounted to $15,000 or $25,000.

The matter comes before this court on the reporter's transcript of the entire proceedings relating to the selection of the jury and the *voir dire* examination thereof, with the necessary affidavits of the plaintiffs and of Thomas W. Loris, one of the attorneys for the plaintiffs, wherein they alleged that such facts were unknown to them before the verdict. (*Dunford* v. *General Water Heater Corp.*, 150 Cal.App.2d 260, 265 [309

---

*Assigned by Chairman of Judicial Council.

P.2d 958].) Also made a part of the record are the affidavits of two dissenting jurors and counteraffidavits by the nine jurors who voted in favor of the verdict for the defendant.

The affidavits of the dissenting jurors, namely Miller and McCarthy, are almost identical. From their affidavits it appears that after the juror Dieffenbacker had been selected as foreman of the jury he made the following statements to the jury as a whole: " 'Have you seen your insurance premium lately? . . . They have gone up, haven't they? . . . Alright [sic], some guy goes out here and smashes into somebody, and then comes into Court, and claims $40,000.00 or $50,000.00 and your premiums go up again.'

"That immediately upon making said statement, juror ANN McCARTHY proceeded to MR. DIEFFENBACKER and faced him, making the following inquiry.

" 'Wait a minute, you are prejudiced. That was nothing to do with this. The lawyer asked you if you were against anyone hurt in an accident, and asking for compensation, and you said you weren't.'

"Juror Dieffenbacker said, 'Oh, no, I'm not prejudiced.' "

The affidavits further allege: "That thereafter, and during the further deliberations of the jury, another member of the jury, whose name I do not recall, made the following statements regarding insurance.

" 'Don't you think if they had a good case the insurance company would have settled out of court. Evidently they didn't have a chance so that's why they came to court.' "

The counteraffidavits, insofar as pertinent to the issue, in part contain the following statements:

By Juror Stauber: "I have read the affidavits filed by Mrs. Anna McCarthy and Mrs. Bette J. Miller and although I recall that insurance was mentioned, it was not included in this jury's deliberations as to whether the plaintiffs were contributorily negligent. The manner in which insurance was mentioned was entirely different than as set forth in the affidavits above [those of jurors Miller and McCarthy]. I would describe it as small talk. As far as I was concerned, and I am sure as far as all the other jurors were concerned, the mention of insurance had no bearing whatsoever in the manner in which I reached my verdict."

By Juror Dieffenbacker: "I hereby assure and affirm to the court that at the time of the voir dire examination of the jury, throughout the trial of the case, and during the delibera-

tions of the jury, I was not prejudiced for or against any party to the action.

"I assured Mr. Loris [attorney for plaintiffs] in answer to his questions that the plaintiffs would have to prove their case to me and that they were entitled to a fair and impartial trial and I state that I had no bias or prejudice in favor of the defendant nor a hostile attitude towards the plaintiffs at the time I was examined or during the trial.

"The question of insurance never entered my mind until Mr. Loris brought to our attention the fact that the plaintiffs had been paid workmen's insurance and when I mentioned insurance in a general conversation during the jury's deliberations, one of the other men jurors stated that we were not supposed to consider insurance and I dropped the matter immediately and nothing further was said about insurance.

"I have read the affidavits of Bette J. Miller and Anna M. McCarthy and I categorically deny that I made any statement such as set forth in said affidavits other than this: To the best of my recollection, the statement I made was to the effect that when juries gave tremendous verdicts, insurance rates went up. I did not intend nor did I apply this remark to this case. When the gentleman said that it shouldn't be discussed, I said absolutely nothing further concerning insurance nor did I hear any other juror mention insurance during the entire deliberations. I did not address this remark toward the jury as a whole but to one of the jurors near me." Dieffenbacker further alleged that he reached his verdict on the ground that the plaintiffs were contributorily negligent.

By Juror Erdman: "I have read the affidavits of Anna McCarthy and Bette J. Miller, both dated July 10, 1958, and I hereby assure and affirm to the court that no fact or circumstance set forth in those affidavits in any wise caused me to vote as I did in favor of the defendant or was any fact, if they are true, as set forth in the affidavits considered by me in rendering my verdict for the defendant.

"I reached my verdict on my conclusion that the plaintiffs had been negligent themselves and, according to the Judge's instructions, could not be given damages against the defendant."

By Juror Yeates: "I was in the presence of the 11 other jurors throughout our deliberations.

"I remember that some one asked if anyone looked at the insurance rates lately. This remark was made just before we

went out for lunch. One of the young ladies said 'Well, you are prejudiced.' Nothing else was said about it. The remark, in my opinion, was not made in such a manner as to influence any one or change any one's mind.

"The main point that carried all the way through the discussions was contributory negligence on the part of the plaintiffs. The Judge instructed us that if the plaintiffs were contributorily negligent, they could not recover and we never did reach the point of discussing damages because nine of us decided that the plaintiffs were negligent and could not be given damages."

By Juror Rudd: ". . . Although I did hear some mention of insurance during our deliberations, I do not recall any length [sic] discussion such as is set forth in the affidavits of Mrs. Miller and Mrs. McCarthy. I did hear Mrs. McCarthy say, 'You are prejudiced.' Nothing further was said." The juror further stated that he reached his verdict because he felt that there was contributory negligence on the part of the plaintiffs.

By Juror Federspiel: "To the best of my recollection, after we came back from lunch, Mr. Dieffenbacker said something about insurance and one of the girls who voted for the plaintiff said that we were not supposed to talk about that and the matter was dropped.

"Mr. Dieffenbacker's remark about insurance had no effect whatsoever in the way I voted. I felt that no matter how I looked at the evidence, there was contributory negligence and the Judge said that if there was contributory negligence on the part of the plaintiffs, our verdict was to go to the defendant.

"I have read the affidavits of Bette J. Miller and Anna McCarthy, in the above entitled matter, and though I was present with the other 11 jurors during all of the deliberations, I do not recall any such statements as set forth in their affidavits other than what I have stated above."

By Juror Tanner: "I have read the affidavits filed in the above entitled matter by Mrs. Anna M. McCarthy and Bette J. Miller and although I was in the presence of the other 11 jurors during all of our deliberations, I do not recall any heated conversation concerning insurance in the nature and extent as set forth in said affidavits. I recall that insurance was discussed by Mr. Dieffenbacker and some one else which gave the impression of a friendly discussion and did not sound as if he was applying the discussion to the facts of

the case. This discussion, as I recall it, took place just before we all were taken to lunch by the bailiff.

"I did hear Mrs. McCarthy accuse Mr. Dieffenbacker of being prejudiced and he promptly and emphatically denied that he was. Mrs. McCarthy stated substantially as follows, 'You are not union so therefore you are prejudiced against unions.' Mr. Dieffenbacker denied that he was prejudiced against unions or as to anything else."

Juror Rohrke, after stating that there was some mention about insurance rates alleges: "I can't remember anything definite that was said about insurance since it did not make any particular impression on me. The remarks were such as one would have in an ordinary conversation when an accident happened and the only thing that did stick in my mind was the blond girl's accusing Mr. Dieffenbacker of being prejudiced and his strong denial."

By Juror Swain: ". . . I heard Mr. Dieffenbacker mention insurance but to the best of my recollection, it was only one or two sentences. It was a remark such as any one would use in a general discussion without any particular emphasis. I heard either Mrs. McCarthy or Mrs. Miller, both of whom were sitting side by side, say to Mr. Dieffenbacker, 'This has nothing to do with the case and you are prejudiced' . . . nothing further was said about it after that occasion, or by any one else.

"I have read the affidavits of Mrs. Bette J. Miller and Mrs. Anna M. McCarthy and the remarks as set forth in them, if made at all, were not addressed to the jury as a whole but were remarks such as I have described above."

It further clearly appears from a reading of the nine affirmative affidavits supporting the verdict that the jury's deliberations never passed beyond the question of liability, and that the question of the amount of damages was not reached, for the simple reason that the jury decided that plaintiffs were guilty of contributory negligence.

■ As stated in *Brown* v. *Guy*, 170 Cal.App.2d 256, 263 [338 P.2d 586], "The granting or denial of a motion for a new trial rests so completely within the discretion of the trial court that an appellate court will not interfere unless a patent abuse of discretion appears. There must first be an 'affirmative showing of a gross, manifest or unmistakable abuse of discretion' (*Schultz* v. *Sussman,* 7 Cal.App.2d 100, 102 [45 P.2d 409]) . . . ■ Since all intendments are in favor of the action taken by the lower court, the affidavits in behalf of the prevailing party are deemed not only to

establish the facts directly stated therein, but all facts reasonably inferred from those stated. (*DeWit* v. *Glazier,* 149 Cal.App.2d 75, 82 [307 P.2d 1031]). In *People* v. *Webb,* 143 Cal.App.2d 402 [300 P.2d 130], the court reviewed an order denying a new trial based on a juror's misconduct . . . 'The trial court by its ruling denying the motion for a new trial necessarily impliedly found that Bradley did not misrepresent his state of mind on the *voir dire* examination. This finding cannot be reversed in the absence of a showing of a clear abuse of discretion.' Too, it does not appear that Mrs. Montgomery's actions constituted proof of intentional (conscious) concealment. In *Mast* v. *Claxton,* 107 Cal.App. 59 [29 P. 48], a juror failed to disclose that one of the attorneys had previously represented him. The court pointed out that to justify the granting of a new trial on that ground, 'it must be shown that some prejudice resulted to the appellant, or that there was a wilfully false and untruthful answer given by the juror, which would lead to the inference that the juror was animated by a dishonest motive in qualifying.' "

■ In the instant case the trial court impliedly found that there was no intentional or conscious concealment of prejudice by the juror Dieffenbacker on his *voir dire* examination, and the record contains substantial support for such ruling. Nor is there any affirmative showing by the mentioning of insurance premiums of prejudice sufficient to warrant a reversal. Nor is there any affirmative showing that the actions or remarks made by the juror Dieffenbacker affected the independent judgment of the nine jurors who voted for the defendant. The affidavits show just to the contrary since the question of damages was not considered by the jury, the verdict having been reached on the ground of contributory negligence. Furthermore, the trial court was in a far better position than this court to determine whether plaintiffs were prejudiced, and their claims in that respect were rejected.

We conclude that the judgment should be affirmed, and it is so ordered.

Peek, Acting P. J., and Schottky, J., concurred.