[Civ. No. 25724. First Dist., Div. One. Nov. 28, 1969.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v.
MELVIN C. HUNT et al., Defendants and Respondents.

COUNSEL

Harry S. Fenton, Jack M. Howard, Richard W. Covert, John P. Horgan, William R. Edgar and Richard S. Levenberg for Plaintiff and Appellant.

Cox & Cummins, James E. Cox, Bernard F. Cummins and Charles L. Hemmings for Defendants and Respondents.

OPINION

SIMS, J.—The state, through the Department of Public Works, as condemnor, has appealed from an order of the trial court granting the condemnees a new trial after a judgment was entered on a verdict which awarded them the sum of $35,000 for the property taken. The condemnees' notice of intention to move for a new trial incorporated each and every ground set forth in section 657 of the Code of Civil Procedure in substantially the language in which it then read. (See Stats. 1965, ch. 1749, § 1, p. 3922.) The motion was supported by the declaration[1] of one of the condemnees'

---

[1]The condemnor was served with a copy of the declaration which had the name of the declarant typed in under the line for his signature. In examining the record in connection with this appeal it was discovered that the original declaration which had been filed with the court was never subscribed. At oral argument the condemnor asserted that the declaration should be disregarded. It is unnecessary to determine the

attorneys, which alleged a discrepancy between the testimony expected and the testimony given by the condemnor's appraiser which it is contended constituted accident or surprise, and by points and authorities which urged that the motion should be granted because the verdict was against the weight of the evidence which had been received in support of a greater award. A counterdeclaration by the attorney for the condemnor evoked a declaration from a second attorney for the condemnees, which, in turn, produced a final declaration on behalf of the condemnor. The condemnor also filed points and authorities on the issue of accident and surprise.

On this record the court made the following order: "The motion of defendants . . . for the new trial as to Parcel 4 in the above-entitled action, having been heretofore argued and submitted to the Court for consideration and decision, now at this time the Court, having considered the same, and being advised in the premises, orders that said motion be granted."[2]

■ The parties agree that the order cannot be affirmed upon the ground of insufficiency of the evidence to justify the verdict because of the failure to state such ground in the order granting the new trial. (See *Mercer v. Perez* (1968) 68 Cal.2d 104, 109-111 [65 Cal.Rptr. 315, 436 P.2d 315]; *Frantz* v. *McLaughlin* (1966) 64 Cal.2d 622, 624 [51 Cal.Rptr. 282, 414 P.2d 410]; *Malkasian* v. *Irwin* (1964) 61 Cal.2d 738, 744-745 [40 Cal.Rptr. 78, 394 P.2d 822]; *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 578-579 [12 Cal.Rptr. 257, 360 P.2d 897].) Nevertheless, despite the failure to comply with the statutory mandate that "the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated" (Code

---

merit of this contention, or whether the condemnor should be estopped to question the authenticity of the declaration because of knowledge imparted by an examination of the copy which was served (cf. United States for the use and benefit of *United States* v. *Western Elec. Co.* (9th Cir. 1964) 337 F.2d 568, 575), or because the defect might have been discovered by a contemporaneous search of the court records. The declaration has been deemed to have been subscribed for the purposes of this appeal.

[2]The order was made November 16, 1967, and it is assumed that the following provisions of section 657 of the Code of Civil Procedure, as adopted in 1967 (Stats. 1967, ch. 72, § 1, p. 970, effective Nov. 8, 1967), govern this appeal: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." In any event the 1967 changes do not materially affect the issues presented by this record. (Cf. Stats. 1965, ch. 1749, § 1, p. 3922.)

Civ. Proc., § 657), the successful movant is entitled to show that the order should be affirmed on any one of the other grounds presented to the trial court. (*Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 136-137 [65 Cal. Rptr. 330, 436 P.2d 330]; *Malkasian* v. *Irwin, supra,* 61 Cal.2d 738, 745; *Grant* v. *Hall* (1969) 274 Cal.App.2d 624, 627-629 [79 Cal.Rptr. 219]; *Gaskill* v. *Pacific Hospital of Long Beach* (1969) 272 Cal.App.2d 128, 129-130 [77 Cal.Rptr. 373]; *San Francisco Bay Area Rapid Transit Dist.* v. *McKeegan* (1968) 265 Cal.App.2d 263, 269-271 [71 Cal.Rptr. 204]; and *Tagney* v. *Hoy* (1968) 260 Cal.App.2d 372, 374-375 [67 Cal.Rptr. 261].)

 Where no grounds or reasons are specified in the order the burden is on the movant to advance any grounds upon which the order should be affirmed, and a record and argument to support it. (*Gaskill* v. *Pacific Hospital of Long Beach, supra,* 272 Cal.App.2d 128, 131-133; *Tagney* v. *Hoy, supra,* 260 Cal.App.2d 372, 377.) The condemnees have met this burden and contend that the declarations they filed in the trial court support the order not only on the ground of "Accident or surprise, which ordinary prudence could not have guarded against" (Code Civ. Proc., § 657, subd. 3), but also on the ground of "Irregularity in the proceedings of the . . . adverse party . . . by which [they were] prevented from having a fair trial." (*Id.,* subd. 1.)

The gravamen of the condemnees' complaint is that they were given to understand that the condemnor's appraiser would testify to a value of from $33,000 to $35,000, and it was not discovered that his appraisal was $27,200 until he testified on the fourth day of the trial. An examination of the record reflects that it fails to show misconduct, or irregularity in the proceedings of the adverse party which prevented the condemnees from having a fair trial, or any cognizable accident or surprise. The order must be reversed.

Before examining the declarations which were filed with the trial court in support of the motion for new trial (see Code Civ. Proc., § 658), it is necessary to refer to those facets of the trial which bear on the issues raised by the declaration.

The testimony as to value was as follows: Mrs. Hunt, co-owner of the property, testified that in her opinion there would have been no difficulty in getting the property rezoned for multiple dwelling use at the time it was condemned; that she believed it could have been rezoned, but not as

readily, for a gas station; and that in her opinion the highest and reasonable price for the property at that time was between $90,000 and $100,000.

Mr. Hunt, the other co-owner, gave similar testimony and gave a value of $100,000.

Mr. Tully, a licensed real estate broker, who was then employed as a salesman, and who was formerly a developer of service station sites for an oil company, opined that the highest and best use of the property was for "Some form of commercial use oriented toward the use of the automobile . . . a service station"; and that it was reasonably probable that the property could be put to that use. He valued the property at at least $100,000.

Mr. Soule, a real estate broker and appraiser, based his judgment on the promise that the highest and best use of the property would be for apartments. He testified that his investigation made him feel that rezoning for such purpose would be fully acceptable to the county and the planning commission, and would be a logical extension of existing zoning. He appraised the property at $76,800.

Mr. Anderson, who had retired from a position of selecting service station sites for the same oil company as had employed Mr. Tully, testified in detail concerning the requisites of a good site for a service station and opined that the property was not desirable for that purpose, and would not be bought by an oil company for such use.

Mr. Hamilton, an independent real estate appraiser, testified that on the basis of his investigation there was a possibility that the property could be rezoned for low density multiple housing use, and that the property definitely could not be rezoned for commercial use. He thought the highest and best use was for more or less a speculative purpose for future apartment development with interim use of the residence on the property for a residence by the owner or a tenant. He appraised the land at $1.80 a square foot or a total of $24,000 for such purposes and the house at a net value of $3,170 for interim use, making an aggregate of $27,170, which he rounded off to $27,200.

In reviewing the issues raised by condemnees' contentions the following rules are applicable: "We are mindful of the fact that all presumptions favor the order granting a new trial as against the verdict, that the order will be affirmed if it may be sustained on any ground, and that the burden is on the party attacking the order to show an unmistakable abuse of discretion on the part of the trial court in granting a new trial. [Citation.]" (*Adkins* v. *Lear, Inc.* (1967) 67 Cal.2d 882, 919 [64 Cal.Rptr. 545, 435 P.2d 321] [judgment vacated on other grounds, *Lear* v.

*Adkins* (1969) 395 U.S. 653 [23 L.Ed.2d 610, 89 S.Ct. 1902]. See also *Malkasian* v. *Irwin, supra,* 61 Cal.2d 738, 747; *People* ex rel. *Dept. Public Works* v. *Auburn Ski Club* (1966) 241 Cal.App.2d 781, 793 [50 Cal. Rptr. 859]; *State of California* ex rel. *Dept. Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 566 [49 Cal.Rptr. 64]; *South Santa Clara etc. Dist.* v. *Johnson* (1964) 231 Cal.App.2d 388, 407 [41 Cal.Rptr. 846]; *Benwell* v. *Dean* (1964) 227 Cal.App.2d 226, 231 [38 Cal.Rptr. 542]; *Brickell* v. *Wittmar* (1959) 175 Cal.App.2d 190, 195 [345 P.2d 494]; and *Whitfield* v. *Debrincat* (1937) 18 Cal.App.2d 730, 733 [64 P.2d 960].)

■ "Since all intendments are in favor of the action taken by the lower court, the affidavits in behalf of the prevailing party are deemed not only to establish the facts directly stated therein, but all facts reasonably inferred from those stated. [Citation.]" *(Brickell* v. *Wittmar, supra,* 175 Cal.App.2d 190, 195-196. See also *State of California* ex rel. *Dept. of Water Resources* v. *Natomas Co., supra,* 239 Cal.App.2d 547, 566; *West* v. *Reigal* (1962) 208 Cal.App.2d 638, 642 [25 Cal.Rptr. 288]; and *Cameron* v. *Cameron* (1952) 110 Cal.App.2d 258, 261 [242 P.2d 408].) In fact the court was free to disregard the facts stated in the declarations filed on behalf of the condemnor. In *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468 [58 Cal.Rptr. 249, 426 P.2d 753], the court ruled, with respect to assertions in a declaration submitted for leave to file a late claim against a county, as follows: "The above statement, while uncontradicted by the county, may well have been given little or no weight by the trial court, and the court was not bound to accept it as true. In *Lohman* v. *Lohman,* 29 Cal.2d 144, 149 . . ., we held that 'a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, and this rule applies to an affidavit.' " (66 Cal.2d at p. 477.)

The unsigned declaration of the office associate of condemnes' trial attorney which was filed with the notice of intention to move for a new trial, reads, insofar as is pertinent, as follows: "On Friday before the trial in the above case commenced, I talked on the telephone with [condemnor's trial attorney]. The conversation was limited to the possibility of settling the above case and other aspects of the trial. During the conversation I asked [him] what figure the State's appraiser would testify to as fair market value. He replied that the State would be in right around the offer. To my knowledge, this was the first and only indication by the State of what figure they would use at trial. The staff appraisal was $35,000, and the testimony of [the appraiser] was approximately $8,000 below that figure. Upon the

termination of our conversation, I related same to [the trial] attorney for defendants."[3]

The subsequently filed declaration of the condemnees' trial attorney reads in part as follows: "It is my very clear understanding borne out by the records in this action that $33,000.00 to $35,000.00 was the sum of the staff appraisal. I was given to understand by [condemnor's trial attorney] that the State would be testifying to a figure 'very close to the staff appraisal.' I have in the past generally followed the practice of subpoenaing the staff appraiser and calling him as an adverse witness and establishing his opinion of value whenever I am advised the State's independent witness will come in sufficiently below the staff figure to make such a program necessary. In this case I did not do so as I felt the disparity, if any, would not be significant. As a matter of fact, the disparity was rather significant, namely, a staff appraisal of at least $33,000 and an outside appraisal at $37,000 [*sic*, $27,200]. Had I known the true facts I would have subpoenaed in the staff appraiser in order to protect my clients' interest."[4] By way of argument he added the following: "I do not believe that even the jury in this case (a 9 to 3 verdict) would have awarded as low a figure as

[3]The first declaration filed in reply by condemnor's trial counsel alleges: "That the staff appraisal of the subject property was not the sum of $35,000. That I did not tell [declarant] that our testimony would be $35,000 or 'right around $35,000' or any other figure. That [the attorney], who actually tried this case for defendants, at the close of the first day of trial, asked me what figure the State would be testifying to." In addition, he referred to nondisclosure on the part of the condemnees as follows: "That during our conversation of October 6, 1967 [obviously erroneous, the conversation referred to in the original declaration allegedly occurred on September 8, 1967, and the trial ensued on September 11 through 15 and 18, 1967] [the office associate] informed me that defendants' appraiser, E. P. Soule, had appraised the subject property at $50,000. Subsequently at the trial of this matter, Mr. Soule testified that the fair market value of the property was the sum of $76,800. At no time during our conversation did [the office associate] inform me that [the trial attorney] would be trying this case for the defendants.

"At no time during the conversation of October 6, 1967 [see above], did [the office associate] inform me that defendants would call Thomas Tully as a valuation witness during the trial of the action. Mr. Tully was called by defendants during the trial and testified that the fair market value of the property was the sum of $100,000."

The allegations concerning Mr. Soule were not controverted, but condemnees' trial attorney explained in his subsequent declaration that the identity and whereabouts of Mr. Tully were only discovered on the weekend before the trial, subsequent to the conversation referred to in the condemnor's attorney's declaration.

[4]In a final declaration condemnor's trial attorney reiterated that at the close of the first day of trial the condemnees' trial attorney asked him "What figure the State would be testifying to?" He stated, "That I did not at that time or any other time tell [condemnees' trial attorney] that the state would be testifying to a figure 'very close to the staff appraisal' nor did I tell him that the state would be testifying to any specific figure or any range of figures." In addition, the declarant pointed out that there is nothing in the record to bear out his adversary's "understanding" of the figure of the staff appraisal, and that there was no prejudice in the failure to produce an appraisal which was not greater than the amount of the award.

$35,000 had they known that the staff appraisal was at least $33,000, if not a higher figure. Accordingly, I respectfully submit, whether through design or inadvertence, my clients were grossly imposed upon under these circumstances."

### Irregularity in the Proceedings

In *Gray* v. *Robinson* (1939) 33 Cal.App.2d 177 [91 P.2d 194], the court observed, "This subdivision refers to irregularities of the court, jury, and adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial. . . . No accurate classification of such irregularities can be made, but it is said that an overt act of the trial court, jury, or adverse party, violative of the right to a fair and impartial trial, amounting to misconduct, may be regarded as an irregularity." (*Id.,* at p. 182.)

In *Piercy* v. *Piercy* (1906) 149 Cal. 163 [86 P. 507], the irregularity shown by the affidavits was that through the wrongful procurement of the adverse party the action was tried without a full and fair presentation of the movant's case. In upholding the order granting the new trial, the court said: "It is settled that any misconduct of a party to an action, by which a full presentation to the court or jury of evidence material to the other party's cause is prevented, is an irregularity for which a new trial may be granted, if thereby a fair trial of the issues has been prevented. (See Hayne on New Trial and Appeal, §§ 25, 46, 49; Spelling on New Trial and Appellate Procedure, §§ 80, 86.)" (149 Cal. at p. 166. See also *Smith* v. *Mitchell* (1923) 64 Cal.App. 463, 469 [221 P. 964] [where one party allegedly induced a witness to give perjured testimony].)

■ According to the declaration filed on behalf of the condemnees, the alleged misconduct of the condemnor's attorney prevented their trial attorney from subpoenaing the condemnor's staff appraiser as an adverse witness. In reference to the misconduct, the condemnees assert that the condemnor's attorney violated ethical standards embodied in the rule that intentionally deceiving opposing counsel is ground for disciplinary action. (Bus. & Prof. Code, § 6128, subd. (a); *Monroe* v. *State Bar* (1961) 55 Cal.2d 145, 152 [10 Cal.Rptr. 257, 358 P.2d 529]; *Coviello* v. *State Bar* (1955) 45 Cal.2d 57, 65-66 [286 P.2d 357]; and see *Bernath* v. *Wilson* (1957) 149 Cal.App.2d 831, 835 [309 P.2d 87].)

Examination of the foregoing cases, on which condemnees rely, reveals no parallel to the instant situation. Leaving aside the question of whether the pot is calling the kettle black (see fn. 3, above), and taking only the facts asserted on behalf of the condemnees, the following appears: It was represented on behalf of the condemnor "that the State would be in right

around the offer." It nowhere appears what the offer was. The first declaration also asserts, "The staff appraisal was $35,000." The source of this information is left to conjecture. The second attorney's statement reads: "It is my clear understanding borne out by the records in this action that $33,000.00 to $35,000.00 was the sum of the staff appraisal." The condemnees have not referred the court to any such record. The only reference noted is the following colloquy in the cross-examination of Mr. Hamilton: "Q. Do you know how far below the staff appraisal in this case you are?[5] . . . THE WITNESS: I don't know whether the staff appraisal was under or over my figure." This declarant further alleged, "I was given to understand by [the condemnor's trial attorney] that the State would be testifying to a figure 'very close to the staff appraisal.' " These allegations fall far short of demonstrating an intent to intentionally deceive opposing counsel. There is no forthright declaration that anyone represented that the appraiser to be called would testify to $33,000 or $35,000. From all that appears the misunderstanding may have been attributable to the declarant's erroneous concept of the nature and amount of the staff appraisal. The matter is better treated under accident and surprise, as it was so urged in the trial court.

Furthermore, it may be noted that if there was misconduct of counsel, or other irregularity which would prevent the condemnees from having a fair trial, there was a duty to call it to the court's attention when it was first discovered. (*Cembrook* v. *Sterling Drug Inc.* (1964) 231 Cal.App.2d 52, 67-68 [41 Cal.Rptr. 492]; *Gray* v. *Robinson, supra,* 33 Cal.App.2d 177, 183. See also *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750]; *Horn* v. *Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561]; *Cope* v. *Davison* (1947) 30 Cal.2d 193, 202 [180 P.2d 873, 171 A.L.R. 667];

---

[5]At this point the court erroneously overruled an objection interposed by the condemnor. There was no obligation on the condemnor to disclose a confidential staff appraisal which was made solely and exclusively for the use of its attorney, and not for the purposes of use as testimony at the trial. (*Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 10-11 [66 Cal.Rptr. 280]. See also *People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 852, 863 [41 Cal. Rptr. 303].)

In *County of Contra Costa* v. *Nulty* (1965) 237 Cal.App.2d 593 [47 Cal.Rptr. 109], the condemnees attempted to bring out the existence of an appraisal unfavorable to the condemnor by cross-examination of the condemnor's right-of-way agent. The court held that it was misconduct to seek to evade the trial court's ruling that any testimony by the right-of-way agent as to the nonwitness appraiser's opinion of value would be hearsay. (237 Cal.App.2d at pp. 598-599. See also *People* ex rel. *Dept. of Public Works* v. *Miller,* 231 Cal.App.2d 130, 133-135 [41 Cal.Rptr. 645].) The court also ruled that it was error to instruct, and misconduct to imply, that the condemnor had fraudulently suppressed evidence by failure to call as a witness an appraiser it had employed to investigate and appraise the property. (*Id.,* at pp. 594 and 598.)

and *People* v. *Manes* (1930) 104 Cal.App. 493, 497 [285 P. 1073].) The consequences of the failure to do so parallel the consequences of failure to act when confronted with accident or surprise, and are discussed below.

*Accident and Surprise*

 " 'Surprise,' as a ground for new trial, denotes some condition or situation in which a party to a cause is unexpectedly placed, to his injury, without any negligence of his own which ordinary prudence could not have guarded against. [Citations.]" (*South Santa Clara etc. Dist.* v. *Johnson* (1964) 231 Cal.App.2d 388, 406 [41 Cal.Rptr. 846].) It may be assumed that the trial court properly found that the condemnees, without regard to the condemnor's culpability, made out a case coming within the foregoing definition by showing that they expected the condemnor's witness to testify to a figure some $6,000 or $8,000 in excess of the appraised value he gave.[6] The respective contentions of the parties on the issue of the propriety of granting a new trial on this showing are found in the early case of *Delmas* v. *Martin* (1870) 39 Cal. 555, wherein the opinion states: "The general rule undoubtedly is, that a party surprised on a trial must apply for relief at the earliest practicable moment, and in such methods as to produce the least vexation, expense and delay. He will not be allowed to speculate on the chances of a favorable decision on other points, and if he fails on these, fall back on his motion for new trial on the ground of surprise. (*Schellhous* v. *Ball,* 29 Cal. 609.) But while this is the general rule, cases may and do frequently arise in which it ought not to be enforced. In *Rodriquez* v. *Comstock* [1864] (24 Cal. 85), it was considerably relaxed in favor of a party who was deceived by his own witness in respect to the facts to which he would testify, and who failed to move for a continuance. But, in relaxing the rule, it should be done only where the surprise is clearly established, and the consequences of it can be avoided on another trial; and it must also be apparent that the party has not been guilty of *laches,* and has acted in good faith in omitting to apply for relief at an earlier stage in the proceedings." (39 Cal. at pp. 557-558.)

In that case the court concluded: "In this case, the deed from Black to the plaintiff was the last evidence offered in the cause, and the Court immediately proceeded to charge the jury. It may well be, that in the last

---

[6]It is noted, however, that the parties may be required to exchange in advance of trial data on which each intends to rely to establish valuation. (*Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 200-201 [41 Cal.Rptr. 721].) "When it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery. [Citations.]" (*Id.,* at p. 203.)

stage of a jury trial, at the conclusion of the evidence, sufficient opportunity may not have occurred to enable the defendants and their counsel to decide, deliberately and discreetly, what course it was proper to pursue in respect to the last item of proof which was offered in the cause. We perceive nothing in the record to justify the belief that the defendants and their counsel were not acting in good faith in omitting to apply for a continuance, and are satisfied that they were guilty of no *laches*; that they were surprised, in the sense of the statute, by the deed from Black to the plaintiff, and that they can probably overcome the effect of that deed, if allowed an opportunity to do so. We think this is a proper case in which to relax somewhat the rule to which we have reverted." (*Id.,* p. 558.) In *Rodriquez,* upon which the court relied, and in *Whitfield* v. *Debrincat, supra,* 18 Cal.App. 2d 730, the court reached similar results where a party was surprised because a witness testified contrary to what he had reason to expect. (See 24 Cal. at p. 88; and 18 Cal.App.2d at pp. 734-738. Cf. *Peterson* v. *Geltz* (1953) 118 Cal.App.2d 794, 798-799 [258 P.2d 875]; and *Baker* v. *Berreman* (1943) 61 Cal.App.2d 235, 241-245 [142 P.2d 448].)

The condemnees, who failed to take action during the course of the trial, seek to come within the exception to the general rule noted in the foregoing cases. They particularly rely upon the following principle: "The trial judge is in the better position to determine whether there were any practicable steps which counsel should reasonably have been required to take at the trial and which would have effaced the disastrous effect of the testimony. The lower court, by its action, found, in effect, that the defendant could have done nothing in this respect." (*Whitfield* v. *Debrincat, supra,* at p. 737.)

On the other hand, the condemnor relies on a line of cases which apply the general rule as quoted above. (See *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 351 [19 Cal.Rptr. 473, 369 P.2d 1] [order denying a new trial approved]; *Kauffman* v. *De Mutiis* (1948) 31 Cal.2d 429, 432-433 [189 P.2d 271] [order granting a new trial reversed]; *Sherwin* v. *Southern Pac. Co.* (1914) 168 Cal. 722, 726 [145 P. 92] [order granting new trial reversed]; *Dewey* v. *Frank Bros. & Co.* (1882) 62 Cal. 343, 347 [order granting new trial reversed]; *Baron* v. *Sanger Motor Sales* (1967) 249 Cal.App.2d 846, 860-861 [57 Cal.Rptr. 896] [order granting new trial reversed]; *Cembrook* v. *Sterling Drug, Inc., supra,* 231 Cal.App. 2d 52, 67 [order denying a new trial approved]; *Lewetzow* v. *Sapiro* (1961) 188 Cal.App.2d 841, 849 [11 Cal.Rptr. 126] [order denying a new trial approved]; *Estate of Nessel* (1958) 164 Cal.App.2d 798, 802-803 [331 P.2d 205] [order granting a new trial reversed]; and *Gray* v. *Robinson, supra,* 33 Cal.App.2d 177, 183 [rule recognized].)

The facts in this case uncontrovertibly point to the fact that the condemnees permitted themselves to speculate on a favorable verdict.

The record concerning the stage of the proceedings at which the condemnees were confronted with the alleged disparity in the condemnor's valuation testimony and concerning the condemnees' subsequent actions in the case, is as follows: The trial began on a Monday, September 11, 1967. On Thursday afternoon Mr. Hamilton revealed his appraisal shortly after the noon recess. Cross-examination by the condemnees commenced before the midafternoon recess and persisted through about two-thirds of the total afternoon session. At the end of the day the court directed counsels' attention to the fact that a judges' meeting would prevent the court from convening on the following, Friday, afternoon. In response to the court's request counsel for the condemnor advised that he had no other witnesses, and counsel for the condemnees informed the court he would have two brief witnesses. Pursuant to the latter's request not to be rushed in his cross-examination of Hamilton, the court recessed the proceedings and instructed the witness to return the following morning.

On Friday morning, cross-examination of Hamilton continued without any mention of surprise concerning his testimony. The condemnor rested upon the conclusion of the redirect and recross-examination of that witness. The condemnees called a witness in rebuttal, and at the conclusion of his testimony assured the court that he was the condemnees' last witness. The parties then stipulated to testimony that would be given by another witness if called, and each party having indicated that there was nothing further to present, the proceedings recessed at 45 minutes before the noon hour.

The following Monday the condemnees sought to reopen their case to show by the testimony of a witness for the same condemnor in another proceeding, that he had testified to a value of $2.10 a square foot for what was allegedly comparable property. The court refused to permit the evidence as an admission against interest by the condemnor, and noted the property referred to was zoned differently. The condemnees were permitted, however, to reopen this case to introduce in evidence the contract between Hamilton and the condemnor.

They were entitled to call the condemnor's staff appraiser, or any other qualified witness, to probe his subjective knowledge as to the fair market value of the property he had appraised. (*People* ex rel. *Dept. of Public Works* v. *Donovan, supra,* 57 Cal.2d 346, 354-357. See also *People* ex rel. *Dept. of Public Works* v. *Miller, supra,* 231 Cal.App.2d 130, 133 and 135.)

Moreover, if the condemnees had received a quotation of a staff

appraisal that was not merely a tentative or hypothetical offer to compromise, but was an independent declaration representing the state's actual belief regarding the market values awarded and the just compensation properly payable to the condemnees, they were entitled to use it as an admission. (*People* ex rel. *Dept. of Public Works* v. *Forster* (1962) 58 Cal.2d 257, 260 and 263-267 [23 Cal.Rptr. 582, 373 P.2d 630]; *People* ex rel. *Dept. of Public Works* v. *Anderson* (1965) 236 Cal.App.2d 683, 689-694 [46 Cal.Rptr. 377]. Cf. *People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 863-865 [41 Cal.Rptr. 303].)

The obvious explanation of the condemnees' failure to act before the verdict lies in the fact that one of the principal issues in the case was the question of whether it was reasonably probable that the zoning of the property could be changed. (See *People* ex rel. *Dept. of Public Works* v. *Donovan, supra,* 57 Cal.2d 346, 352-354.) From opening statement to final argument the issue of the uses to which the property could be put was bitterly contested. Here, unlike *Donovan,* the issue was presented to the jury under proper instructions. When confronted with the discrepancy, the condemnees were faced with an election to impeach Hamilton by resort to higher appraisals allegedly made for the condemnor, at the risk of strengthening the theory of limited use, or to leave the basis for Hamilton's testimony uncorroborated, in the hope that the jurors would accept the testimony offered by the condemnees as to the probable uses with the attendant high values. When the jury returned with a lower figure—"it was then a disappointment rather than surprise." (*Dewey* v. *Frank Bros. & Co., supra,* 62 Cal. at p. 347.)

The condemnees suggest that if their trial attorney, before the trial commenced, knew of the discrepancy between the staff appraisal and the market value figure later testified to by the appraiser, different options were open to him than were available four days later. They suggest that the discrepancy could have been brought before the jury early in the trial, not as proof of their case on market value, but to show a serious inconsistency in the condemnor's two approaches to value. The restrictions on the use of the evidence of the appraisal in a staff report have been noted above (see fn. 5, *supra*). No cognizable prejudice is demonstrated by the fact that the condemnees may have been relegated to offering the evidence, if they chose to do so, in rebuttal.

The court is not unmindful of the principles enunciated in *Malkasian* v. *Irwin, supra,* wherein it is stated: "Defendant argues even if it were error it was waived by plaintiff's failure to object. In some circumstances, failure to object can constitute a waiver. But the rules applicable to such a waiver, to invited error or to estoppel, have no application when an appellate court is

considering the propriety of an order granting a new trial. If the trial court had denied the new trial such an error would be considered waived by failure to object. But the trial court has broad discretion in considering motions for a new trial. Here the court had definitely determined that there had been 'a miscarriage of justice.' The court definitely felt a new trial was required. The trial court's discretion should be upheld even where the error was a minor or debatable one. There is no necessity of showing prejudice in such a case. In the instant case, even if the challenged argument were only debatably erroneous, the trial court's discretion in granting the new trial cannot be disturbed." (61 Cal.2d at p. 747. See also *Gillingham* v. *Greyhound Corp.* (1968) 263 Cal.App.2d 564, 569-570 [69 Cal.Rptr. 728]; and *Helling* v. *Chandler* (1966) 241 Cal.App.2d 19, 25-26 [50 Cal.Rptr. 219].) ■ Although the foregoing rules may apply to misconduct in arguments of counsel and to minor errors in instruction, it "has no application where the affidavit or other evidence upon which the order is made furnishes no basis for the exercise of such discretion." (*Slemons* v. *Paterson* (1939) 14 Cal.2d 612, 615-616 [96 P.2d 125]. Accord: *Kauffman* v. *De Mutiis, supra,* 31 Cal.2d at p. 434; *Baker* v. *Berreman, supra,* 61 Cal.App.2d 235, 246, and see other cases cited above in which an order granting a new trial was reversed.)

■ The jury returned a verdict which was equal to or in excess of the appraisal which the condemnees allege they were precluded from producing. Under these circumstances it is questionable whether the irregularity, accident or surprise of which the condemnees complain, materially affected any of their substantial rights. ■ "It has been aptly stated that the trial court, no less than an appellate court, is expressly enjoined by article VI, section 13, of the Constitution, from granting a new trial for errors unless they are prejudicial, and that if it clearly appears that such errors could not have affected the result of the trial the court is bound to deny the motion. (*Sparks* v. *Redinger* (1955) 44 Cal.2d 121, 123 . . .)" (*Adkins* v. *Lear, Inc., supra,* 67 Cal.2d 882, 920-921. See also *Gillingham* v. *Greyhound Corp., supra,* 263 Cal.App.2d 564, 574.)

The order granting a new trial is reversed.

Molinari, P. J., and Elkington, J., concurred.