[Civ. No. 20375. Third Dist. July 22, 1981.]

RODERICK F. BRISTOW, Plaintiff and Respondent, v.
THOMAS A. FERGUSON et al., Defendants and Appellants.

Counsel

Peters, Fuller, Rush, Schooling, Luvaas & Carter and David H. Rush for Defendants and Appellants.

Laughlin & Christensen, Robert E. Laughlin and Nels A. Christensen for Plaintiff and Respondent.

Opinion

**BLEASE, J.**—Defendants, Thomas A. Ferguson, Walter Hutton, Alonzo A. Plumb, and Frank C. Vásquez, appeal from an order granting plaintiff's motion for a new trial after a jury rendered a verdict for defendants. Plaintiff's complaint alleged fraud and conspiracy in his removal from a general partnership in which all the parties were involved. The new trial motion was granted as to the conspiracy cause of action on the sole ground that part of a jury instruction "could quite likely have misled" the jury.

The jury was instructed that: "[¶ 1] A conspiracy is a combination of two or more persons who join together for the purpose of committing a wrongful act which causes damage to the plaintiff. [¶ 2] As long as two or more persons agree to perform a wrongful act, the law places liability for the resulting damages on all of them, regardless of whether they actually commit the wrong themselves. Conspiratorial conduct implicates all who agree to the plan to commit the wrong as well as those who actually carry it out. Furthermore, the requisite concurrence in the plan may be inferred from the nature of the acts done, the relation of the parties and the interests of the conspirators. Tacit consent as well as express approval will suffice to hold a person liable as a conspirator. [¶ 3] *Mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.*" (Italics added.)

Only the third paragraph of the instruction is at issue; the first is definitional and the second was given approval in *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785 [157 Cal.Rptr. 392, 598 P.2d 45]. The disputed paragraph is modeled on language approved in feder-

al criminal conspiracy trials. (See, e.g., *United States* v. *Diecidue* (5th Cir. 1979) 603 F.2d 535, 548.)

## DISCUSSION

■ At issue is the validity and prejudicial effect of an instruction impliedly permitting the jury to find a civil conspiracy by inference from the *mere* similarity of conduct, association and common aims and interests of the defendants. We conclude that the instruction is misleading and should not have been given but reverse the trial court's granting of a new trial because the verdict favored the parties (defendants) potentially prejudiced by the instruction.

■ A new trial may be granted pursuant to Code of Civil Procedure section 657, subdivision 7, for an error in law. An erroneous or misleading instruction is an error in law. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 41(e), p. 3617.)

"Where the trial court grants a new trial on the ground of error in the instructions, its conclusion, in the exercise of a wide discretion, will not ordinarily be disturbed. (*Hunton* v. *California Portland Cement Co.*, 50 Cal.App.2d 684, 695 [123 P.2d 947]; *Barnett* v. *Garrison*, 93 Cal.App.2d 553, 557 [209 P.2d 426].) All presumptions favor the order as against the verdict (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338]), and the order will be affirmed if it may be sustained on any reasonable view of the record. (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 358 [170 P.2d 465].) But the trial court, no less than the appellate court, is expressly enjoined by article VI, section 4 1/2 [now § 13], of our Constitution from granting a new trial for error of law unless such error is prejudicial. If it clearly appears that the error could not have affected the result of the trial, the court is bound to deny the motion. (*Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 262 [143 P.2d 929].)" (*Sparks* v. *Redinger* (1955) 44 Cal.2d 121, 125 [279 P.2d 971]; see also *Adkins* v. *Lear, Inc.* (1967) 67 Cal.2d 882, 920-921 [64 Cal.Rptr. 545, 435 P.2d 321]; *People* ex rel. *Dept. Pub. Wks.* v. *Hunt* (1969) 2 Cal.App.3d 158, 172 [82 Cal.Rptr. 546].)

The parties dispute the correctness of paragraph 3 of the instruction which contains an implied permissive inference. It is the validity of this inference and its potential prejudicial effect in this case to which we now turn.

■ The validity of an inference must be measured against the legal purposes it serves. An inference has no life of its own. It is generally measured by its relevancy to the issues tendered in the action. (1 Jones on Evidence (6th ed. 1972) § 3.2, p. 129 ["[I]nferences as such are better considered from the standpoint of relevancy ...."].) This is a corollary of the principle that "'[t]he general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a *material issue*.' (*People* v. *Jones* (1954) 42 C.2d 219, 222, 266 P.2d 38; see also *People* v. *Graziadio* (1964) 231 C.A.2d 525, 529, 42 C.R. 29.)" (Italics added.) (Witkin, Cal. Evidence (2d ed. 1966) § 313, p. 275.)[1]

■ The first paragraph of the jury instruction sets forth the required elements of a conspiracy. "A conspiracy is a combination of two or more persons who join together for the purpose of committing a wrongful act which causes damage to the plaintiff." (See Cooper, *Civil Conspiracy and Interference with Contractual Relations* (1975) 8 Loyola L.A. L.Rev. 302, 306; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Kenworthy* v. *Brown* (1967) 248 Cal.App.2d 298, 301 [56 Cal.Rptr. 461].) "'Conspiracy (the agreement) is ordinarily not actionable by itself. The cause of action arises out of some wrongful act committed by one or more of the conspirators ....'" (*Unruh*, 7 Cal.3d at p. 631, quoting 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading § 773, p. 2389.) The wrongful act must constitute "an actionable wrong that is the *subject* of the conspiracy ...." (*Kenworthy*, 248 Cal.App.2d at p. 301.)

The second paragraph sets forth a general direction that "the requisite concurrence and knowledge [in the conspiratorial plan] ""'may be inferred from the nature of the acts done, the relation of the parties, [and] the interests of the alleged conspirators ....'"" (*Wyatt* v. *Union Mortgage Co., supra*, 24 Cal.3d at p. 785.) This states little more than general matters from which the jury may infer participation in the con-

---

[1]"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) It has its value in establishing facts which are relevant to the action. Although the reasoning process by which an inference taken from one fact to another is informed by logic and experience, the inferential route must be measured by its capacity for reaching its destination, a *relevant fact*. There may be many ways of going from A to B, but B remains the destination and necessarily limits the routes to those probative of B.

. . .

spiracy.[2] It does not suggest abrogation of the wrongful act which is the *sine qua non* of the conspiracy.

The defendants claim that the disputed third paragraph does no more than redundantly frame the second paragraph in negative form. This is not so. The third paragraph trenches upon the standards by which a conspiracy is measured; it is its capacity for misleading the jury about the elements of the conspiracy, that is, its capacity for confusing the proof with what must be proved, which marks the instruction for error.[3]

The disputed paragraph sets forth the negative form of an implied permissive inference. It states that *"mere"* similarity of conduct, association and the discussion of common means and interests *"does not necessarily* establish proof of the existence of a conspiracy."[4] (Italics added.) The implied inference is that *mere* similarity of conduct, etc., *may establish proof* of a conspiracy.[5]

So phrased, the inference suggests to the jury that a judgment for the plaintiff may be founded upon evidence less than probative of the illegal objective or illegal method which is a central element of the tort, that it need not prove the necessary element of wrongful purpose or method. The inference is plainly misleading, but in a direction favoring plaintiff. (See *ante*, fn. 5.)[6]

[2]It is difficult to understand from what kinds of matters the jury could reason about a conspiracy if it is not these matters.

[3]Proof generated standards are, of course, not uncommon to the common law. But they do not find reasoned use in the unreflective repeal of an established standard through the covert functioning of an ill-phrased inference.

[4]The term "conspiracy" is used in the first paragraph to mean the completed tort. It bears the same meaning in the context of the disputed paragraph. Thus, the third paragraph provides a standard of proof for the completed tort. The implied inference arises from the potent coupling of "mere" with "does not *necessarily* establish proof." (Italics added.) If the jury were instructed that *mere* similarity of conduct, etc., does *not* establish proof of a conspiracy, the instruction would carry a correct meaning.

[5]Plaintiff's counsel endorsed this phrasing of the implied inference, when presented to him at oral argument, for the unstated but obvious reason that in such form the inference can readily be seen as favorable to plaintiff. Plaintiff's objection to the negative ("ain't necessarily so") form of the instruction given can only be attributed to its semantical deemphasis of the inference.

[6]A permissive inference in a pattern instruction is generally objectionable in that it provides no criteria for the use of the jury in deciding whether or not to make it. In such form, it lends itself to confusion in legal standards. "Instructions on permissive inferences ... are simply awkward comments on the evidence.... [T]hey are objectionable on policy grounds because they are crude and uninformative." (Allen, *Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional Approach to Evidentiary Devices* (1980) 94 Harv.L.Rev. 321, 361-362.)

An instruction with such misleading potential should not be given. However, where the instructional error could not have misled the jury because it is inconsistent with the verdict, the trial judge's finding of prejudice cannot stand. (See *Sparks* v. *Redinger, supra*, 44 Cal.2d at pp. 123-125; *Adkins* v. *Lear, Inc., supra*, 67 Cal.2d 882; *People* ex rel. *Dept. of Pub. Wks.* v. *Hunt, supra*, 2 Cal.App.3d 158.) Here, the parties potentially prejudiced by the instruction (the defendants) won. Clearly the "error[] could not have affected the result of the trial . . . ." (*Sparks*, 44 Cal.2d at p. 123.)[7]

The judgment (órder granting a new trial) is reversed and the trial court is directed to reinstate the judgment for defendants previously entered.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied August 14, 1981, and on August 21, 1981, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied September 16, 1981.

---

[7]Although there is no transcript of the trial, our analysis of the prejudicial nature of the error turns on the outcome of the trial, a fact before us.